172

(No. 4996-)

PARKHILL TRUCK COMPANY, A CORPORATION, Claimant, *vs*. STATE OF ILLINOIS, Respondent.

*Opinion filed May 11, 1965.*

WHAM AND WHAM and CARUTHERS AND MONTREY, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

PEZMAN, J.

On January 10, 1961, claimant, Parkhill Truck Company, filed a written application with the Illinois Division of Highways, Bureau of Traffic, for permission to transport a load (vessel) weighing 22,000 pounds with an overall width of 11 feet and a height of 14 feet, 6 inches on a 5-axle tractor semi-trailer from the Missouri-Illinois line south of St. Louis to Champaign, Illinois over the following highways: By-Pass U.S. 50, Illinois 157, U.S. 66, 16, 127, 48, 47, and 10. On the same day the Division of Highways sent the following telegram to Union, Missouri:

"Parkhill Truck Co.
Will Call
Union, Missouri
Permit 710 authorizes movement vehicle weighing 22,000 pounds, mounted on 5-axle tractor semi-trailer, overall width 11 feet, overall height 14 feet 6 inches, from Missouri line U.S. Bypass 50, 157, U.S. 66, 16, 127, 48, 47, 10 to Champaign. Expires sunset January 25. Flagman shall be furnished by grantee to insure safety to all other traffic and any projecting loads shall be clearly marked with flags. Movement shall be made during daytime any day except Saturday, Sunday or holiday. Grantee is responsible

for any accident or damages resulting from this movement. Permit granted insofar as Department has authority. In accepting permit, grantee certifies that movement will be made in accordance with limitations stated herein. Speed limit 30 miles per hour. Movement shall be made only when pavements are free from ice and snow."

The permit was granted pursuant to the pertinent portions of Pars. 222a and 230, Chap. 95½, Ill. Rev. Stats. (1959):

*Par. 222a*: "The height of a vehicle from the underside of the tire to the top of the vehicle, inclusive of load, shall not exceed thirteen feet, six inches . . ."

*Par 230*: "(a) The Department with respect to highways under its jurisdiction and local authorities with respect to highways under their jurisdiction may, in their discretion, upon application in writing or by telegram and good cause being shown therefor, issue a special permit in writing or by telegram authorizing the applicant to operate or move a vehicle or combination of vehicles of a size and weight of vehicle or load exceeding the maximum specified in this Act or otherwise not in conformity with the provisions of this Act upon any highway under the jurisdiction of the party granting such permit and for the maintenance of which said party is responsible. Where a permit is sought for overweight the application shall show that the load to be moved by such vehicle or combination of vehicles cannot reasonably be dismantled or disassembled.

(b) The application for any such permit shall specifically describe the vehicle or vehicles and load to be operated or moved and whether such permit is requested for a single trip or for limited continuous operation. The application shall state, also, the points of origin and destination of overweight vehicles or loads and of oversize vehicles or loads when specifically requested by the Department or local authority.

(c) The Department or local authority is authorized to issue or withhold such permit at its discretion; or, if such permit is issued at its discretion to prescribe the route or routes to be traveled, to limit the number of trips, to establish seasonal or other time limitations within which the vehicles described may be operated on the highways indicated, or otherwise to limit or prescribe conditions of operation of such vehicle or vehicles, when necessary to assure against undue damages to the road foundations, surfaces or structures, and may require such undertaking or other security as may be deemed necessary to compensate for any injury to any roadway or road structure.

(d) Every such permit shall be carried in the vehicle or combination of vehicles to which it refers and shall be open to inspection by any police officer or authorized agent of any authority granting such permit, and no person shall violate any of the terms or conditions of such special permit."

Parkhill's driver, William Beggs, picked up his load,

which consisted of a prefabricated sewage pumping station, at Leavenworth, Kansas at about 7:30 on the morning of January 10, 1961, and, preceded by his wife, Elaine, who was driving a 1961 Ford Fairlane displaying a warning flag, drove to Washington, Missouri where he spent the night. He picked up the telegram at Union, Missouri on the way.

The load, which was owned by the firm of Zimmer & Francescon of Moline, Illinois, was 14 feet, 4 inches above the ground at its highest point at the time Beggs started his trip, and was being carried by Parkhill as bailee of Zimmer and Francescon, and as lessee of Beggs, the owner of the tractor, and one Robert Nesmith who owned the trailer.

Early the next morning Beggs, again preceded by his wife in the Ford, resumed his trip and at about 11:40 A.M., while traveling north on U.S. 66 about 3 miles east of Edwardsville, Illinois, came to the intersection of U.S. 66 and Illinois 143. Route 143, running east and west, passes over U.S. 66 with a clearance of 14 feet, 2¼ inches. There were no clearance signs (because of the Highway Division's policy of not marking bridge clearances that are more than 14 feet), and Beggs, maintaining his speed of about 30 miles an hour, headed under the overpass. The top of the pumping station struck the I-beam on the underside of the overpass, slid off the back of the trailer on to the road beneath the bridge, and was irreparably damaged. According to the testimony there had been no change in tire pressure, nor had anything else been done, which would have caused a change in the height of the load between the starting point of the trip and the point of impact with the bridge, so we can assume that at the time of impact the highest point of the load was still 14 feet, 4 inches above the ground.

Respondent does not dispute Parkhill's claim that the cargo was damaged in the amount of $12,059.26, and that its remaining salvage value was $300.00. Thus Parkhill,

which brings this action under a subrogation agreement with Carriers Insurance Exchange, the insurance carrier for Zimmer and Francescon, is entitled to an award of either $11,759.26 or nothing.

Claimant contends, in essence, that (a) Respondent breached its duty to claimant in allowing claimant, without warning, to proceed over a route, which respondent knew, or, in the exercise of ordinary care, should have known, was unsafe under the circumstances; (b) that claimant was in the exercise of ordinary care for the safety of its vehicle and the load; and, (c) that respondent's negligence proximately caused the collision and resultant damage.

Respondent, on the other hand, contends (a) that the accident was proximately caused by the driver's negligent failure to advise himself that the clearance of the overpass at 66-143 was insufficient for his load; and, (b) that by accepting the permit Parkhill accepted responsibility for damages incurred in moving the overheight vehicle.

The issue then is whether the duty to be certain that the load would clear the overpass was on claimant or respondent.

It is true, as contended by respondent, that the bridge merely created a condition, and was not the proximate cause of the collision, and that the State is not an insurer against accidents on its highways. We believe, however, that claimant has proven by a preponderance of the evidence that respondent could have, and should have taken steps to prevent this accident. It either knew, or, in the exercise of ordinary care, should have known that by traveling the prescribed route with the load, which he had on, Beggs would have trouble at the intersection in question. Respondent's failure to either re-route Beggs, or refuse the permit was, in our opinion, the proximate cause of the accident.

We are aware of the fact that Parkhill asked for this particular route, and that, as shown by the evidence, a booklet was available showing the insufficient clearance at this intersection. It is clear from the evidence, however, that the booklet contained certain errors, and was not very reliable, and that Beggs had never seen the booklet, and never had any reason to know of its existence. Moreover, Parkhill had in the past received 30 overheight permits under which its drivers had traversed Illinois highways without mishap. Under these circumstances, it is our opinion that Beggs and his superiors in the Parkhill Company had a right to expect that respondent would not allow this load to be carried over a clearly dangerous route. We do not believe that Beggs could reasonably be expected to stop and examine each overpass as he came to it. Nor was he under any duty, as suggested by respondent, to take the ramp up over 143 instead of trying to go underneath the overpass, as he did. To do so would have been a departure, however slight, from the prescribed route.

The clear mandate of the statute is that the Department shall examine each application as it comes in, and use its discretion as to whether to issue the permit as requested, issue a different one, or refuse altogether. This may create practical difficulties in view of the large number of applications received daily by the Department, but the automatic issuance of permits would render the statute wholly meaningless.

Without attempting a precise definition of the provision in the permit, which states that the grantee assumes all responsibility for any accidents or damages resulting from the movement, it is our conclusion that such a provision cannot be used by the State, as counsel for respondent contends, to relieve itself of liability for negligence. We do not believe that an exculpatory clause is enforceable where, as

here, the matter is one of public concern, and the party seeking exculpation is in a dominant position. *Willis Jackson vs. First National Bank of Lake Forest,* 415 Ill. 453; *Cerny-Pickas and Co. vs. C. R. Jahn Co.,* 7 Ill. 2d 393; *O'Callaghan vs. Waller and Beckwith,* 15 Ill. 2d 436; *Gulf Transit Co. vs. United States,* 43 Ct. Cl. (F) 83; *Kenna vs. Calumet, Ham-and Southeastern R. Co.,* 206 Ill. App. 17; *Campbell vs. Chicago, R. I. and P. Ry Co.,* 243 Ill. 620.

It is our judgment that an award be made to claimant in the amount of $11,759.26.