JAMES A. CAMPBELL, Appellee, *vs.* THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Appellant.

*Opinion filed February 16, 1910.*

1. TRIAL—*court cannot weigh evidence in passing on a motion to direct verdict.* In passing upon a motion to direct a verdict for the defendant in a personal injury case the court cannot weigh the evidence, but is required to view it in the light most favorable to the plaintiff and to resolve all controverted questions of fact in his favor.

2. NEGLIGENCE—*when judgment of Appellate Court is final.* In reviewing the action of the trial court in refusing to direct a verdict for the defendant in a personal injury case, the Supreme Court has only to consider whether the facts which the evidence tends to prove have any reasonable tendency to show that the defendant was negligent and that the plaintiff was injured by such negligence and was himself in the exercise of ordinary care, and if they have such tendency the judgment of the Appellate Court as to their weight is final.

3. SAME—*act of a switchman in stepping upon brake-beam of an approaching car is not negligence per se.* There is no rule of law that the act of a switchman in attempting to step upon the brake-beam of an approaching car is of itself such negligence as will defeat a recovery for injuries, and it is for the jury to say, under the circumstances shown by the evidence, whether he was negligent in so doing.

4. SAME—*it is for the jury to say whether switchman was negligent in not choosing safer method.* If there is evidence tending to show that the method chosen by a switchman for doing certain work was a customary method and was considered safe, it is for the jury to say whether he was negligent in choosing that method in preference to one which would have been safer, at the cost of some inconvenience and delay.

5. SAME—*proof of a customary method of doing work is some evidence as to whether it is negligent.* While negligent acts do not cease to be negligent because they are frequent, yet proof of a customary method of doing work by persons who are frequently and habitually required to perform it is some evidence as to whether the method is or is not negligent.

6. RAILROADS—*proper use of grab-iron on car is not limited to very act of coupling cars.* If it is necessary for a switchman to adjust the knuckle of a car in order to make a coupling, such act is as much a part of the coupling when the cars are several hun-

dred feet apart as when they are close together; and his use of the grab-iron in attempting to board the car and adjust the knuckle when the cars are some distance apart is not such an unwarranted use as relieves the company from liability for an injury due to the defective condition of the grab-iron.

7. MASTER AND SERVANT—*care required of servants is to be exercised in view of master's duty.* The liability of the master to use reasonable care to furnish his servant ordinarily safe instrumentalities with which to work is imposed by law, and the ordinary care required of a servant is to be exercised in view of this duty of the master.

8. SAME—*master cannot contract to relieve himself from liability for his negligence.* A servant does not assume a risk arising from the failure of the master, without the knowledge of the servant, to perform his duty with respect to instrumentalities furnished for the servant's work, and public policy will not permit a master to contract with a servant to relieve himself from liability for injuries occasioned by his own negligence or failure to perform duties imposed upon him by law.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Rock Island county; the Hon. EMERY C. GRAVES, Judge, presiding.

JACKSON, HURST & STAFFORD, (E. C. LINDLEY, of counsel,) for appellant.

SEARLE & MARSHALL, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court affirming a judgment recovered by appellee, against appellant, in an action on the case for personal injuries. The errors assigned and argued are the refusal of the court to direct the jury to find the defendant not guilty and the giving of an instruction for the plaintiff.

In passing upon the motion to direct a verdict the court could not weigh the evidence, but was required to view it in the light most favorable to the appellee and to resolve all controverted questions of fact in his favor. So viewed,

the evidence tends to show that the appellee, while working as one of a switching crew employed by appellant in the yards of Deere & Co., in Moline, Illinois, signaled the engineer to back his engine, with two cars attached, on a track for which appellee had just thrown the switch, for the purpose of coupling to another car standing on that track; that as the cars approached him at the rate of two or three miles an hour, the appellee stepped upon the brake-beam of the front car and at the same time tried to take hold of the grab-iron on the end of the car, but because it was bent in so close against the body of the car that he could not grasp it, he was not able to maintain his position but fell and was very severely injured; that appellee looked at the grab-iron but did not see that it was bent in; that the track was curved and the car equipped with a Janney coupler, which would not couple by impact on such a track unless the knuckle was open; that appellee stepped upon the brake-beam, which was three or four inches under the end of the car, for the purpose of adjusting the knuckle so as to make the coupling when the cars should come together; that his action in so doing was the practical and proper method of switching and is considered safe, and that he was in his proper place on the brake-beam. It is not the province of this court to determine whether these facts were proved, or whether, if proved, they establish negligence on the part of appellant or care on the part of appellee. We have only to consider whether the facts which the evidence tends to prove have any reasonable tendency to show that the appellant was negligent and that the appellee was injured by such negligence, and was himself, at the time, in the exercise of ordinary care. If they have such tendency the judgment of the Appellate Court as to their weight is final.

Negligence is always a question of fact, arising out of the circumstances of the particular situation. It has, however, come to be regarded as a legal question, so far as a motion to direct a verdict is concerned, where, upon the un-

controverted facts, or, if the facts are disputed, upon the facts as claimed by the party against whom the motion is directed, the minds of all reasonable men must agree upon one conclusion. If ordinary men may reasonably arrive at different conclusions the questions of fact must be submitted to the jury. It is contended on behalf of the appellant that the evidence fails to show any negligence on its part and that it does show that the injury to the plaintiff resulted from his own negligence. The questions of fact are argued at length in the briefs, though such argument is a mere waste of our time and of no benefit to the appellant. On any question where there is a conflict in the evidence we must regard the facts as settled in favor of the appellee.

It is manifest that the evidence tended to show that the proximate cause of plaintiff's injury was the defective condition of the grab-iron, but it is insisted that this evidence does not show negligence on the part of the appellant, because the grab-iron was not placed on the end of the car for the purpose for which the appellee was using it. The grab-iron was required on the end of the car by section 4 of the act of May 12, 1905, (Hurd's Stat. 1908, p. 1709,) designed to promote the safety of employees of railroad companies, for greater security to men in coupling and uncoupling cars. It is argued that it was intended to be used only in cases when it became absolutely necessary to go in between the cars and in the very act of coupling. According to the appellee's testimony it was necessary for him to open the knuckle to make sure of the coupling. It seems reasonable to regard that as a part of the act of coupling these cars even though they were several hundred feet apart at the time. If the adjusting of the knuckle is necessary to be done in order to make the coupling, it is as much a part of the act of coupling if done when the cars are five hundred feet apart as when they are five feet apart.

It is insisted that it was negligence, as a matter of law, for appellee to attempt to get upon the car coming toward

him by stepping upon the brake-beam and catching the grab-iron. A number of cases are cited in which it has been held that it is negligence to attempt to get upon the front end of a moving car or locomotive. They are for the most part cases in which the question was passed upon as one of fact. There is no rule of law, as contended by appellant's counsel, that under any circumstances such an attempt is negligence which will defeat a recovery by the injured person. There is evidence that it was the usual practice, in the situation presented, for the switchman at the front of the car to step on the brake-beam and hold to the grab-iron, and that it was considered safe. It is true that negligent acts do not cease to be negligent because they are frequent, but proof of a customary method of doing an act by those who are frequently and habitually required to perform it is some evidence as to whether the method is or is not negligent. In view of the rate of speed of the car, the situation of the brake-beam and the grab-iron and the usual manner of doing the switchman's work, we are not prepared to say, as a matter of law, that stepping upon the brake-beam as appellee did was such an act as a man of ordinary prudence engaged in the service in which appellee was engaged would not have done under the circumstances. It was not absolutely necessary for appellee to get upon the car in that way or in any way. He might have chosen a safer way at the cost of some inconvenience or delay. His work was necessarily dangerous, and whether ordinary prudence required him to choose some other way of doing it, or whether he acted with the care of an ordinarily prudent switchman in the same circumstances, was a question of fact properly to be determined by the jury.

It is suggested that the appellee knew of the danger of getting on a car coming toward him, and that in his written application to the appellant for employment he assumed the risk if he attempted to do so. The application was a

printed blank furnished by appellant, filled out and signed by appellee. It occupies nine pages of the record, four of which are devoted to provisions intended to limit the liability of appellant to the employee or to restrict the employee in the enforcement of such liability. These pages contain a statement with reference to the dangerous character of the service in which the applicant is about to engage and the necessity for the exercise of great care under various circumstances, and conclude with the statement that the applicant understands that the duties of the situation applied for expose him to great danger, the risk of which he assumes. The liability of the master to use ordinary care to furnish to his servant ordinarily safe instrumentalities with which to work is imposed by law, and the ordinary care required of the servant is to be exercised in view of this duty of the master. The servant does not assume the risk when the risk arises from the failure of the master, without the knowledge of the servant, to perform this duty. Public policy will not permit the master by contract with his servant to relieve himself from liability for injuries occasioned by his own negligence or to impose upon the servant a risk which the law imposes upon the master. *Consolidated Coal Co.* v. *Lundak,* 196 Ill. 594; *Himrod Coal Co.* v. *Clark,* 197 id. 514.

The objection made to the instruction given on behalf of the plaintiff is, that it submits to the jury the question whether the appellee was in the act of coupling cars at the time he received his injury when there was no evidence that he was so engaged. We have already held that there was evidence tending to show that he was so engaged, and the objection therefore fails.

The questions of fact in this case were properly submitted to the jury. No error of law occurring on the trial has been shown.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*