HOWARD E. WATERS, Plaintiff-Appellee, *v.* CHICAGO & EASTERN ILLINOIS RAILROAD COMPANY, Defendant-Appellant.

(No. 70-70;

Fifth District—August 9, 1973.

Walker & Williams, of Belleville, (Edward G. Maag, of counsel,) for appellant.

Carr & Raffaelle, of East St. Louis, (Rex Carr, of counsel,) for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from a judgment in the amount of $185,000 entered on a jury's verdict in favor of the plaintiff, Howard E. Waters, in the Circuit Court of St. Clair County in a common law negligence action to recover damages for personal injury that plaintiff allegedly sustained on the premises of the defendant, Chicago & Eastern Illinois Railroad Company's piggyback ramp at Mitchell, Illinois.[1]

In the complaint plaintiff charged that defendant had negligently and carelessly pushed railroad cars up and against the loading ramp, causing a bridge plate to become wedged between a car and the ramp when defendant knew or in the exercise of reasonable care should have known and should have foreseen the risk of bodily injury and harm to the plaintiff by reason thereof. Defendant, by its answer denied the allegations of negligence, and due care on the part of plaintiff, and alleged that plaintiff was not employed by defendant and alleged contributory negligence on the part of plaintiff as an affirmative defense.

Plaintiff has contended that this appeal should be dismissed on the theory that the appeal was not timely because the post trial motion was not filed within the extended time from the court's docket entry on June 12, 1969, the date of the jury verdict,

> "June 12, 1969. The Jury returned the following verdict:
> "We, the jury, find in favor of the plaintiff, Howard E. Waters, and against the defendant, Chicago & Eastern Illinois Railroad Corporation.
> We assess the damages in the sum of $185,000.00."
> Said verdict signed by the foreman and each and every member of the jury.
> Judgment is entered on the jury's verdict.
> (Signed) Wm. P. Fleming<br>William P. Fleming<br>Presiding Judge"

and the clerk's photocopying that sheet of the docket minutes and inserting that photocopy in the Book of Judgments on June 16, 1969. Subsequent to extensions of time for the filing of a post trial motion on

---

[1] For disposition of the claim of this plaintiff against this defendant for the same injury in an action brought under the Federal Employees Liability Act. (45 U.S. Code Anno § 51 to 59.) (see *Waters v. Chicago & E. I. R.R. Co.*, 86 Ill.App.2d 48, 229 N.E.2d 51.) That the defendant railroad's negligence was not necessarily determined in that action was held in *Peo. ex rel. Chicago & Eastern Ill. R.R. v. Fleming*, 42 Ill.2d 231, 246 N.E.2d 275.

December 4, 1969, defendant filed a "Motion for Stay of Execution and for Entry of Final Judgment, Post Trial Motion, etc." Preceding the motions were the words "Upon entry of a final judgment, the defendant files this its post trial motion". On the same day the court entered an order staying execution and set a date for a hearing on the merits. On December 29, 1969, the court allowed "that portion of the motion which seeks the entry by the court of a final appealable judgment", entered a conventional form of judgment, and reserved ruling on the post trial motion until further argument. On March 5, 1970, the court denied defendant's post trial motion, and on March 17, 1970, notice of appeal was filed from the judgment entered on December 29, 1970.

While the record does not disclose plaintiff's arguments to any part of the defendant's motion of December 4, neither does it disclose that plaintiff made any motion to strike any part of it on grounds that it was not timely filed as against the purported judgment of June 12, 1969, and both parties and the court below treated it as adequate to challenge the properly entered judgment of December 29, 1969.

■■ An order which reads "Judgment upon the verdict" without reciting in whose favor and against whom, is not a valid or final judgment order. (*Kaley v. Carr*, 348 Ill.App. 151, 108 N.E.2d 512.) See also *Public Works and Buildings v. Greseking*, 108 Ill.App.2d 105, 246 N.E.2d 707 wherein this Court stated:

> "The general rule is that a judgment must designate the parties for and against whom it is rendered or it will not be a valid final judgment. *Kaley v. Carr*, 348 Ill.App. 151, 103 N.E.2d 512, and cases cited therein. We do not condone entry of a purported judgment which does not meet that requirement; *the parties are entitled to know precisely the status of the matter and where they stand, without searching the record, once the issues have been determined*." (Emphasis here supplied.)

As in that case the parties were inconvenienced by the procedure followed, but the matter was corrected, and the parties were not prejudiced.

Waters was employed by the Simpson Express and Transfer Company of St. Louis, Missouri. He alleged that he suffered back injury while attempting to lift a bridge plate. The bridge plate was an integral part of the system which allowed the trailers carried "piggyback" to be loaded and unloaded from the railroad cars. In order to load or unload the trailers from the railroad cars at the defendant's premises, there was a ramp which consisted of an inclined plane leading up to a platform which was the same height of the railroad flat cars. Thus, the tractor trailers were permitted to be driven from ground level to the height of the railroad cars and onto the railroad cars or vice versa, as required.

The "bridge plate" was used to bridge the gap or space between the end of the last railroad car against the ramp and the edge of the ramp. the bridge plate is a flat piece of metal, sometimes aluminum, sometimes steel, attached and hinged at one end so as to permit it to be raised or lowered. One such bridge plate is affixed to each end of a piggyback flat car. The ramp has a bridge plate of corresponding construction affixed to the end of the ramp by a hinged pin so as to permit that bridge plate to be lowered from the ramp onto the flat car and when the bridge plate is lowered a tractor trailer can be driven from the ramp onto the car. The bridge plates each weigh approximately 200 pounds and require two men to lift them.

Waters' job was to help load and unload the tractor trailers to and from the railroad cars. On the evening before the day of the injury, Waters and his fellow worker, William Travis, completed their work by leaving at the ramp a single empty flat car. Waters had left the bridge plates in a down position as the ramp men had been instructed to do at the end of each working day.

From time to time bridge plates would become joined or wedged to the side rail of a car and would have to be pried loose with an iron pry-bar. The iron pry-bar was carried in the cab of the trailer and was used for many purposes by the ramp men, including the main use of taking off side rails of low bed trailers, lifting block, as well as the prying loose of the bridge plates when that was necessary.

Upon returning to work on July 25, 1962, Waters and Travis found a number of railroad cars had been placed onto the ramp track containing trailers which had been shipped in and were to be unloaded that day. Waters and Travis set about their work of driving onto the cars and unloading the trailers. At the conclusion of the day and after all of the cars had been loaded, Waters and Travis, as their last act of the working day, were to raise the bridge plates between the cars and between the last car and the ramp thus indicating that the trail could be taken out during the night. In attempting to lift the bridge plate on the last car Waters sustained the injury to his back.

Although there is some dispute as to how the injury occurred, both agreed that they squatted down together and attempted to lift the bridge plate together after saying "OK, let's go, give it all we've got." It was while attempting to lift the bridge plate with all of their strength under those circumstances that Waters and Travis testified that they discovered the bridge plate was jammed and/or stuck against the side rail of the railroad car so that they couldn't lift it. Waters testified that he got a catch in his back when the plate did not move as he lifted on it.

There was testimony that Waters did not look at the position of the

plate before lifting although he was squatted with his eyes only 30 inches from the plate. There was also testimony that the only way to determine whether or not there was a jammed or stuck plate was to lift on the plate. A defense witness testified that "This plate is so heavy that there is no way you have of checking that in the ordinary course of your business to see whether it is stuck or not, without giving it everything you've got." He further stated "You don't expect it to happen. You're not looking for it. When you reach down to lift up on the bridge plate, you don't expect it to be stuck. There is no way you can tell if it is stuck until you do lift it."

There was other evidence that the jamming or sticking could have been caused by either the defendant's train being wedged against the end of the ramp by being driven too far into the ramp or by a failure of the train crew to set the brakes.

Waters has been unable to continue working heavy industrial jobs and there was testimony by Waters that although he has applied for various jobs, he has been unable to secure employment since 1963.

The railroad urges as a basis of this appeal that the plaintiff failed to prove any negligence on the part of the defendant and thus the defendant should have been granted its motion for a directed verdict at the close of the plaintiff's case. The defendant also asserts that the verdict is against the manifest weight of the evidence in that the plaintiff failed to sustain his burden of proof that he was free from contributory negligence.

■■ We accept the defendant's assertion that in Illinois the mere occurrence of an accident raises no presumption of negligence. (*Rotche v. Buick Motor Co.*, 358 Ill. 507, 193 N.E. 529; *Huff v. Illinois Central R.R. Co.*, 362 Ill. 95, 199 N.E. 116.) Here no one saw the cars being backed in. The plaintiff in this case showed: A. That the defendant had sole control and responsibility over the railroad cars, and the movements of the cars, the ramp and the track; B. That the jamming or wedging of the bridge plates is caused by the improper placement of the cars by the railroad switchmen or by the railroad men failing to set the brakes on the cars in order to insure no movement which would cause the jamming and; C. That the bridge plate in question was, in fact, jammed or wedged. The defendant did not refute A and C above but claims that jamming can be the result of other causes such as improperly installed plates, the type of car used, improper alignment of cars, and different type of side rails on the cars. However, each of these causes are equally inferential as plaintiff's evidence and is within the proper realm of the jury. There was, therefore, evidence from which the jury could reasonably have found for the plaintiff. We cannot say that in this case "all of

the evidence, when viewed in its aspect most favorable to the opponent so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria and Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504.) All of the evidence in this case which was concerned with the cause of the jamming indicated that jamming could be caused by moving trains or improperly set brakes. The evidence thus is in favor of the plaintiff.

■■ The railroad also contends that the verdict was based solely on conjecture citing *Tiffen v. Great Atlantic & Pacific Tea Co.*, 18 Ill.2d 48, 162 N.E.2d 406, "Liability may not be based on imagination, speculation or mere conjecture and the question of existence should be submitted to jury determination only where there is some direct evidence supporting each material allegation of complaint or some circumstantial evidence from which inferences of such facts clearly preponderate." The facts as contained in the record and as stated in this opinion provide a basis of "some circumstantial evidence from which inferences of such facts clearly preponderate", particularly in view of the showing made that defendant had sole control and responsibility for the movement of the cars to the ramp.

■■ Therefore, it cannot be said that there was lack of sufficiency of the evidence from which the jury could find in favor of the plaintiff.

■■ With regard to the defendant's contention that a verdict should have been directed for defendant since the plaintiff failed to sustain his burden of proof that he was free from contributory negligence, the evidence is taken in a light most favorable to the plaintiff. (*Pedrick v. Peoria and Eastern Railroad Co., supra.*) All of the evidence as given by direct testimony, indicated that a determination of whether or not a bridge plate was jammed could be made only by lifting the plate. The plaintiff did testify that he had not looked to see the position of the plate before lifting. However, the evidence indicated also that jamming was an infrequent occurrence. The railroad urges a duty upon the plaintiff to look and cites for its authority *Clark v. Quincy Housing Authority*, 86 Ill.App.2d 458, 229 N.E.2d 780, which contains "It is well settled that the existence of a duty on the part of the defendant does not excuse the plaintiff from looking when he should look and from seeing that which is within the range of his vision." In this case the evidence indicated that it was impossible to detect a jam upon visual inspection. This coupled with the fact that for two hundred pounds there could be no light lift of the plate. Also, there does not seem to be a duty upon the plaintiff to use a crowbar based upon the testimony that the jamming was a rare occurrence. The appellant also urges that the plaintiff attempted to lift the plate by himself, and thus should have been aware

that the plate was jammed and not have attempted the heavy lift. This evidence was in dispute and denied by the plaintiff and may have not been believed by the jury.

■■ Thus, the judgment of the jury is not against the weight of the evidence and the plaintiff presented evidence that he was free from contributory negligence.

■■ The defendant next urges that the court erred in admitting into evidence certain testimony on the custom and practice of operating on other railroads as a substitute for evidence of negligence in the case at Bar. Defendant cites 28 Illinois Law and Practice Section 222:

> "Evidence with respect to custom and usage is admissible in a negligence case where relevant to the issues and where the custom is general in character * * * while negligent acts do not cease to be negligent because of repetition, proof of a customary method of doing an act by those frequently and habitually required to do it is admissible as affording some evidence as to whether the method is negligent."

■■ The defendant contends that although the plaintiff proved practice and custom in the industry, he did not show that the defendant deviated from that custom to give an inference of negligence. This asserting that both custom and deviation must be shown in order to have custom admissible into evidence. The two are separate and apart from each other. The issue of deviation from custom goes to the issue of negligence and not to the issue of admissability of custom and practice. (*Rouse v. New York, Chicago and East St. Louis R.R. Co.*, 349 Ill.App. 139, 110 N.E.2d 266.) See also *Campbell v. Chicago, Rock Island and Pacific Ry. Co.*, 243 Ill. 620, 90 N.E. 1106 as cited in *Fowler v. Chicago Railways Co.*, 285 Ill. 196, 129 N.E. 635:

> "It is true that negligence acts do not cease to be negligent because they are frequent, but proof of a customary method of doing an act by those who are frequently and habitually required to perform it is some evidence as to whether the method is or is not negligent."

■■ There is not a question here of the admissibility of this evidence to show negligence but only to show custom. The question of whether or not there was sufficient other evidence of defendant's negligence has been discussed in preceding paragraphs. Therefore, as stated in *Turner v. Chicago Housing Authority*, 11 Ill.App.2d 160, 136 N.E.2d 543, although evidence of deviation may be admissible, it alone will not support a verdict as this alone is not proof of negligence. The other cases cited by the defendant are not on point.

■■ Evidence of custom has also been inadmissible in the absence of proof that such practice was concurred in by the opponent thereto. Here plaintiff submitted testimony of such concurrence as was the custom and practice of other railroads. *South Chicago City Ry. Co. v. Dufresne,* 200 Ill. 456, 65 N.E. 1075.

Finally, the defendant asserts that the plaintiff, by repetitive use of leading and suggestive questions, innuendo, conclusion and remarks of counsel and the questioning by the trial court, prejudiced defendant, thereby requiring a new trial. The question we must decide is whether the conduct of the plaintiff resulted in injury to the defeated party; was the defendant prejudiced, or stated yet another way, did the conduct of the trial work an injustice to one of the parties? (*Chicago Union Traction Co. v. Lauth,* 216 Ill. 176, 74 N.E. 738; *Bishop v. Chicago Junction Ry. Co.,* 289 Ill. 63, 124 N.E. 312; *Franko v. Crosby,* 278 Ill.App. 416.) The defendant has reported in its brief a box score of the number of objections and the rulings thereon. On inspection of the number of objections and rulings on both sides of this dispute, there is not a great difference.

■■ The defendant also objects that certain statements and questions made by the trial court constituted prejudicial error. A trial judge has the right to question witnesses in order to elicit the truth or to bring enlightenment on material issues which seem obscure. (*People v. Palmer,* 27 Ill.2d 311, 189 N.E.2d 265; *People v. Wesley,* 18 Ill.2d 138, 163 N.E.2d 500.) The defendant contends that the following colloquy was prejudicial:

"Q. All right. Would you repeat your answer to the question Mr. Waters.

A. I could not see that the bridge plate was jammed.

Q. Why not?

A. Because it is steel against steel and you can't tell if it's jammed or not. It looked like it was just laying there normally.

Q. Had you had connection with or had you observed jammed or wedged bridge plates on other occasions?

A. Rare occasions, yes.

Q. How rare, Mr. Waters?

A. Well, maybe once every two months or three months. It just wasn't too often.

Q. Did you on this occasion expect this? Did you and Travis expect this bridge plate to be jammed or wedged?

Mr. Maag: Objection your Honor.

The Court: Sustained as to whether he suspected it or not.

Mr. Carr: No, expected, your Honor, not suspected.

The Court: Ex or. sus—either way. The objection will be sustained.

Mr. Carr: I don't understand your Honor.

The Court: How would the Court or you know whether the door was locked by looking at it? Can you expect it to be locked or suspect it to be locked?

(multiple voices * * * unintelligible.)

Mr. Carr: I can't tell by looking, your Honor. Can you?

The Court: Can you expect it to be locked or suspect it to be locked?

Mr. Carr: Not when I'm supposed to be able to lift up, I don't expect it to be locked.

Mr. Maag: Objection to this.

Mr. Carr: That's the whole point.

Mr. Maag: I object to these statements of Mr. Carr and move that the jury be instructed to disregard it.

The Court: Sustained.

Mr. Carr: I want to make it clear that the Court is ruling that the answer is obvious that you cannot tell something is wedged just by looking at it. That's the basis, of course, looking at the ruling, and that's the reason I don't have to go into this. If I don't have to go into the burden of proving this, as far as his case is concerned, if it is obvious, and I think it's obvious, and apparently the Court does too, and that is the only reason I am getting into this point.

The Court: Do you have any opinion about whether this is jammed or whether it isn't?

A. You cannot tell if it is jammed by looking at it.

The Court: And you cannot tell if a door is locked just by looking at it, can you?

A. No, sir, you cannot.

Mr. Maag: May I approach the bench, your Honor?

The Court: Yes.

Mr. Maag: At this time, I move for a mistrial and the withdrawal of a juror because of the prejudicial remarks of Mr. Carr in connection with his colloquy with the Court concerning the Court's interpretation of the evidence and the Court's interpretation of the law and testimony. It is highly prejudicial. Mr. Carr stated his opinion and he stated he agrees with the Court and the Court's opinion as to what the evidence shows and it has prejudiced the defendant and invites prejudice of the jury and

I move for the withdrawal of a juror and the declaration of a mis-trial.

The Court: Denied."

 Prejudice must be shown. (*Johnson v. Cunningham,* 104 Ill. App.2d 406, 244 N.E.2d 205.) A truism is not reversible error. (*Rost v. F. H. Noble and Co.,* 232 Ill.App. 430, reversed on other grounds, 316 Ill. 357, 147 N.E. 258.) The Court merely asked a question of the witness to clear up a point of dispute and such question was not the basis of defendant's objection. We are not persuaded that defendant was prejudiced by the conduct of counsel, nor the court's inquiries and remarks, nor by a combination of the two. Neither do we believe that the manner in which the trial was conducted resulted in the jury awarding an excessive amount of damages to plaintiff.

We have reviewed the record as a whole and do not find reversible error.

The judgment of the trial court is affirmed.

Judgment affirmed.

G. MORAN and JONES, JJ., concur.