FIRST FINANCIAL INSURANCE CO., Plaintiff-Appellant and Cross-Appellee, *v.* PUROLATOR SECURITY, INC., Defendant-Appellee and Cross-Appellant.—(THE CITY OF CHICAGO *et al.*, Defendants.)

First District (4th Division)    No. 77-1475

Opinion filed February 22, 1979.

William S. Wigoda, of Chicago, for appellant.

Louis M. Rundio, Jr., of McDermott, Will & Emery, of Chicago, for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiff, First Financial Insurance Company, suing as subrogee of its insured, the Berwyn-Broadway Currency Exchange, brought this action to recover monies paid by plaintiff to its insured as a result of a burglary loss. Defendant, Purolator Security, Inc., was under contract with plaintiff's insured to provide alarm protection services. Both parties appeal from an order of the circuit court of Cook County which in part granted defendant's motion for judgment on the pleadings as to the enforceability of the alarm protection contract, but awarded partial summary judgment in favor of plaintiff and against defendant in the amount of $500.

The issues presented for review are: (1) whether the provisions of the alarm protection service contract which exculpate defendant from liability for its own negligence are against public policy; (2) whether the contract is unconscionable because a disparity of bargaining power existed between the contracting parties; (3) whether the provision of the contract limiting defendant's liability, if any, to $500, is a valid liquidated damage provision; and (4) whether the liquidated damage provision is

inconsistent with the contract provisions exculpating defendant from liability.

We affirm the ruling of the trial court upholding the validity of the exculpatory provisions, reverse that part of the order awarding summary judgment to plaintiff for $500 and remand with instructions.

Plaintiff provided insurance coverage to the currency exchange under a Currency Exchange Blanket Bond, for all loss sustained by the currency exchange due to theft, fire, embezzlement and certain other casualty losses. In addition, the currency exchange contracted with defendant Purolator for alarm protection services. Under the terms of defendant's form contract with the currency exchange, defendant agreed to install and maintain a security system on the currency exchange premises, "without liability and not as an insurer." Defendant further agreed "upon receipt of an intrusion alarm signal, [to] transmit the alarm to * * * the Public Police Department, notify the subscriber * * * and within a reasonable time, dispatch its representative to re-set or repair the alarm." The alarm protection service contract contained the following exculpatory provisions:

> "11. PUROLATOR does not represent or warrant that the system may not be circumvented or compromised, or that the system will in all cases provide the protection for which the system is designed to detect or avert. It is agreed that PUROLATOR is not an insurer. Insurance, if any, will be obtained by the SUBSCRIBER and the payments hereinbefore specified are based solely upon the value of the services herein described and are unrelated to the value of the SUBSCRIBER's property or property of others located in SUBSCRIBER's premises. It is not the intention of the parties that PUROLATOR assume responsibility for any loss or damage, irrespective of cause or origin, which results directly or indirectly to person(s) or property from performance or nonperformance of obligations imposed by this contract or from negligence, active or otherwise, of PUROLATOR, its agents or employees, including but not limited to loss or damage sustained through burglary, theft, hold-up, fire, or any other cause. Because of the nature of the services to be performed, it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from the failure on the part of PUROLATOR to perform any of its obligations under this agreement, or from the failure of the system to operate properly. Therefore, if notwithstanding the above provisions, there shall at any time be, or arise, any liability on the part of PUROLATOR by virtue of this agreement, whether due to the negligence of PUROLATOR or otherwise, such liability shall

be limited to the sum of five hundred dollars ($500.00). This sum shall be paid and received as liquidated damages and not as a penalty, and such liability shall be complete and exclusive.

12. SUBSCRIBER does hereby for himself and any other parties claiming under him, release and discharge PUROLATOR from and against all hazards covered by SUBSCRIBER's insurance, it being expressly agreed and understood that no insurance company or insurer will have any right of subrogation against PUROLATOR.

13. The SUBSCRIBER agrees to and shall indemnify and save harmless PUROLATOR, its employees and agents, for and against any claims, suits, losses, demands and expenses arising from any death of or injury to any person or any loss or damage to property occasioned or alleged to be occasioned by PUROLATOR's performance or failure to perform its obligations under this agreement whether due to PUROLATOR's negligence or otherwise, or through burglary, theft, robbery, fire or any other cause."

On October 20, 1975, the currency exchange was burglarized by two individuals who entered the premises by cutting a hole in the roof of the structure. During the breakin, the intrusion alarm sounded. Defendant transmitted the alarm to the police and dispatched its own representative to the currency exchange. After inspecting the premises, the police and defendant's representative determined that a false alarm had sounded.

It was later discovered that the burglars had hidden on the roof during this inspection. When the police and defendant's representative had left the premises, the burglars apparently re-entered the currency exchange through the undiscovered hole, took $6,713.45 in currency and food stamps and fled without setting off another alarm.

Under the terms of its bond, plaintiff indemnified the currency exchange for the entire $6,713.45 loss. Any rights of subrogation acquired by plaintiff arise from an assignment of the currency exchange's contractual rights under the alarm protection service contract. As subrogee, plaintiff filed this action to recover the amount of the loss. Count I, the only count of the three count complaint pertaining to defendant Purolator, alleged that the defendant's negligent failure to perform its duties under the alarm protection service contract resulted in the burglary loss.

Defendant filed a motion for judgment on the pleadings, or in the alternative for partial summary judgment, on count I of the complaint. In its motion defendant alleged that under the exculpatory provisions of its contract with the currency exchange, plaintiff acquired no rights of subrogation against defendant, and, further, that defendant was not liable

for the loss even if caused by its own negligence and, even if found liable, the dollar amount of its liability could not exceed $500.

Plaintiff answered defendant's motion for judgment on the pleadings and attached an affidavit of Leslie B. Zucker, who had signed the contract on behalf of the currency exchange. Plaintiff admitted that the currency exchange had entered into the alarm protection service contract with knowledge of the exculpatory language; however, plaintiff claimed that paragraphs 11, 12 and 13 of that contract were against public policy and that the contract was unconscionable because a disparity in bargaining power existed between the contracting parties.

The trial court granted defendant's motion for judgment on the pleadings in part, finding that the exculpatory provisions of the contract were valid. However, the court also found that the contract contained an ambiguity which, when construed in favor of plaintiff, entitled plaintiff to recover $500 from defendant. Judgment was entered accordingly and both parties appealed.

Opinion

I

Plaintiff seeks to avoid the effect of the exculpatory provisions in paragraphs 11, 12 and 13 of the alarm protection service contract, contending: (1) that enforcement would be against public policy because the currency exchange provides a valuable social service and (2) that the contract is unconscionable because a disparity in bargaining power existed between the parties.

A.

■■ In keeping with the principle of freedom of contract, contractual limitations are generally held valid in this State (see *Schumann-Heink v. Folsom* (1927), 328 Ill. 321, 159 N.E. 250; *Pick Fisheries, Inc. v. Burns Electronic Security Services, Inc.* (1976), 35 Ill. App. 3d 467, 342 N.E.2d 105), unless it would be against the settled public policy of the State to do so, or there is something in the social relationship of the parties to the contract militating against upholding the agreement (*Jackson v. First National Bank* (1953), 415 Ill. 453, 114 N.E.2d 721).

It has been held that in the absence of a legislative directive to the contrary, exculpatory provisions must be deemed valid and enforceable. (*Erickson v. Wagon Wheel Enterprises, Inc.* (1968), 101 Ill. App. 2d 296, 242 N.E.2d 622; *Owen v. Vic Tanny's Enterprises* (1964), 48 Ill. App. 2d 344, 199 N.E.2d 280.) For example, our legislature has declared it against the public policy of this State for innkeepers (Ill. Rev. Stat. 1977, ch. 71, par. 1 *et seq.*), professional bailees (Ill. Rev. Stat. 1977, ch. 26, par. 7—204), landlords (Ill. Rev. Stat. 1977, ch. 80, par. 91), and building

contractors (Ill. Rev. Stat. 1977, ch. 29, par. 61), to be exculpated from liability for their negligence in certain circumstances.

■ Where the legislature has not acted, an exculpatory clause will be held invalid only if a special social relationship of a semipublic nature is found to permeate the transaction between the parties. Such a relationship has been found to exist in cases involving common carriers (*Checkley v. Illinois Central R.R. Co.* (1913), 257 Ill. 491, 100 N.E. 942; Ill. Rev. Stat. 1977, ch. 27, par. 1), and employer-employee relationships (*Campbell v. Chicago, Rock Island & Pacific Ry. Co.* (1910), 243 Ill. 620, 90 N.E. 1106). The special social relationship argument has been rejected in cases involving a variety of contracts including business leases (*Simmons v. Columbus Venetian Stevens Building, Inc.* (1958), 20 Ill. App. 2d 1, 155 N.E.2d 372), health club memberships (*Owen v. Vic Tanny's Enterprises* (1964), 48 Ill. App. 2d 344, 199 N.E.2d 280; *Bers v. Chicago Health Clubs, Inc.* (1973), 11 Ill. App. 3d 590, 297 N.E.2d 360 (abstract)), and agreements involving stock car racing (*Morrow v. Auto Championship Racing Association, Inc.* (1972), 8 Ill. App. 3d 682, 291 N.E.2d 30), the rental of riding equipment (*Erickson v. Wagon Wheel Enterprises, Inc.* (1968), 101 Ill. App. 2d 296, 242 N.E.2d 622), and the stabling of horses (*Rutter v. Arlington Park Jockey Club* (7th Cir. 1975), 510 F.2d 1065).

In *Pick Fisheries, Inc. v. Burns Electronic Security Services, Inc.* (1976), 35 Ill. App. 3d 467, 342 N.E.2d 105, involving a contract for alarm protection services similar to the contract in the instant case, the court rejected the plaintiff's contention that a liquidated damage provision in the contract was unenforceable as against public policy. In holding that no special relationship existed between the security company and the plaintiff, the court stated:

> "[W]e find that the relationship between these two corporations, which was voluntarily entered into at the time these contracts were negotiated and signed, is not of the semipublic character inherent in those five classes of cases cited above where certain limitations on liability have been held void." 35 Ill. App. 3d 467, 474, 342 N.E.2d 105, 109-10.

■ Plaintiff seeks to distinguish the instant case because the security company in *Pick Fisheries* entered into a contract with a non-regulated business while here defendant contracted with the currency exchange, a business subject to regulation by "An Act in relation to * * * community currency exchanges." (Ill. Rev. Stat. 1977, ch. 16½, pars. 31 through 56.3.) This argument is indefensible for several reasons. First, the existence of a public policy interest in a contract is not evidenced merely by the fact that the state regulates the business which made the contract. (*Rutter v.*

*Arlington Park Jockey Club* (7th Cir. 1975), 510 F.2d 1065.) Further, the act in question was passed primarily to protect the consumers served by the currency exchange, not to protect the currency exchange in its relationships with those providing business services to it. Finally, when an exculpatory provision is found invalid because of a special relationship between the parties, it is the semipublic nature of the party seeking to exculpate itself from liability that allows the court to invalidate the provision. (See *Tunkl v. Regents of University of California* (1963), 60 Cal. 2d 92, 383 P.2d 441, 32 Cal. Rptr. 33.) Thus, the Act cannot imbue the alarm protection services contract with a semipublic character because it is defendant, not the currency exchange, which sought to limit its liability in that contract.

### B.

■ Plaintiff also contends that a disparity in bargaining power between the currency exchange and defendant makes enforcement of the exculpatory provisions in paragraphs 11, 12 and 13 of the alarm protection service contract unconscionable. The existence of a disparity in bargaining power has often been considered in connection with the special relationship exception discussed above. The fact that a form contract had been employed or that one party, for economic reasons, had limited bargaining power, may affect the court's interpretation of contractual provisions. (*Cerny Pickas & Co. v. C.R. Jahn Co.* (1952), 347 Ill. App. 379, 106 N.E.2d 828.) However, the relative bargaining power of parties to a contract is but one factor to be considered in determining whether the enforcement of exculpatory provisions would be unfair or unconscionable. See *Tunkl v. Regents of University of California* (1963), 60 Cal. 2d 92, 383 P.2d 441, 32 Cal. Rptr. 33.

■ An unconscionable bargain has been defined as one "which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." (*Hume v. United States* (1889), 132 U.S. 406, 410, 33 L. Ed. 393, 396, 10 S. Ct. 134, 135; see *Neal v. Lacob* (1975), 31 Ill. App. 3d 137, 334 N.E.2d 435.) The term unconscionability encompasses an "absence of a meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." (*Williams v. Walker-Thomas Furniture Co.* (D. C. Cir. 1965), 350 F.2d 445, 449.) The unconscionability doctrine has been applied most often to prevent instances of commercial sharp practices by parties possessing superior bargaining power.

In arguing that the exculpatory provisions are unconscionable, plaintiff relies heavily on the fact that these provisions were included in a form contract prepared by defendant. Plaintiff emphasizes that by

statute, the currency exchange must be insured and argues that insurers require the currency exchange to obtain alarm protection service. Plaintiff also points to the affidavit of Leslie Zucker which states:

"That even though [Zucker] did not like certain provisions of the agreement with Purolator, specifically paragraphs 11, 12 and 13, he had no alternative, but to sign; that based on [Zucker's] long experience with these affairs, he knew all security companies had similar provisions as paragraphs 11, 12 and 13 of defendant's agreement; that [Zucker] under economic duress was forced to sign said agreement; that it was this type of contract or no security service at all."

Although the statements in Zucker's affidavit are not controverted, the affidavit does not deny that the contract was entered into with full knowledge of the exculpatory provisions. Zucker asserts that all security companies use contracts containing similar provisions; however, he does not indicate whether the currency exchange attempted to negotiate with defendant Purolator or one of its competitors to change those provisions. Under these circumstances it is difficult to conclude that the provisions were unconscionably forced upon the currency exchange.

■■ Furthermore, we must consider the nature of the contract entered into by the parties. Defendant agreed to provide central station intrusion and holdup alarm service, not to physically secure the currency exchange premises. As the contract repeatedly emphasizes, defendant did not undertake to insure the currency exchange in case of burglary nor underwrite any risk of loss. The compensation received by defendant related to the value of the services it agreed to perform and is unrelated to the value of the property on the premises. Moreover, the currency exchange independently obtained insurance from plaintiff to cover burglary losses. From the totality of the circumstances, this appears to be an arms length transaction based on reasonable commercial considerations which are neither one-sided nor unconscionable. We can find no special legal relationship nor overriding public interest which demands that these contract provisions, voluntarily entered into by competent parties, should be rendered ineffectual.

## II

By cross-appeal, defendant challenges the trial court's award of damages to plaintiff in the amount of $500 under the liquidated damage provision in paragraph 11 of the contract. The trial court determined that the limitation provisions in paragraphs 11, 12 and 13 were valid and enforceable. It further held that the liquidated damage provision in paragraph 11 was inconsistent with other paragraphs holding defendant harmless as to any amount. The trial court construed the contract strictly

against the defendant drafter and found defendant liable to the extent provided in the liquidated damage provision.

We conclude, however, that it was unnecessary for the trial court to interpret the contract since no ambiguity exists in the contract terms and, therefore, we reverse the award of summary judgment for plaintiff and against defendant in the amount of $500. See *Owen v. Vic Tanny's Enterprises* (1964), 48 Ill. App. 2d 344, 199 N.E.2d 280.

Having already found the provisions of the contract valid and enforceable and that no fraud, duress or mistake existed in its formation, we must give full expression to the contract provisions. Paragraph 11 first states that defendant is not responsible for any loss "which results directly or indirectly to person(s) or property from performance or nonperformance of obligations imposed by this contract or from negligence [of defendant] including but not limited to loss or damage sustained through burglary * * *." The provision in paragraph 11 limiting defendant's liability, if any, to $500 is an alternative provision, providing for unanticipated occurrences outside the provisions of the contract, but it is not inconsistent with the provisions holding defendant harmless for occurrences anticipated by the contract.

Additionally, paragraph 13 states that the currency exchange "agrees to indemnify and save harmless" defendant from any claims against it arising from defendant's performance of its obligations under the contract. Paragraph 12 states that "no insurance company or insurer will have any right of subrogation against [defendant]." Plaintiff, as subrogee, acquired only those rights which were created by the alarm protection services contract. Under the explicit and unambiguous terms of that contract, the claims which plaintiff asserts have been fully released and discharged.

Because the provision in paragraph 11 limiting liability to $500 is not applicable to this situation, it is unnecessary for us to determine whether it is an appropriate liquidated damage provision.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed in part and reversed in part. We affirm that portion of the order upholding the validity of the exculpatory provisions in paragraphs 11, 12 and 13 of the contract. That portion of the order entering summary judgment on behalf of plaintiff and against defendant Purolator in the amount of $500 is reversed and remanded with instructions that judgment be entered in favor of defendant Purolator.

Affirmed in part, reversed in part and remanded with instructions.

JOHNSON and MEJDA, JJ., concur.