**GENERAL BARGAIN CENTER,**
**Plaintiff-Appellant,**

v.

**AMERICAN ALARM COMPANY, INC.,**
**Defendant-Appellee.**

**No. 1–581A185.**

Court of Appeals of Indiana,
First District.

Jan. 19, 1982.

Michael J. Siegel, Indianapolis, for plaintiff-appellant.

John C. Green, Smith & Jones, Indianapolis, for defendant-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant General Bargain Center (General) appeals an adverse ruling in the Morgan Superior Court on a motion for summary judgment filed by defendant-appellee American Alarm Company, Inc. (American) in response to General's suit for damages for breach of contract.

We affirm.

## STATEMENT OF THE FACTS

General's complaint alleges that it operated a retail business located in Indianapolis, and that American, a corporation engaged in the burglary alarm business, pursuant to a written contract installed an alarm system in General's place of business. That pursuant to the contract when the alarm equipment was tampered with and a signal made, American was obligated to investigate. That on October 1, 1979, at 7:45 p. m., a break-in occurred at General's establishment and American dispatched personnel to investigate, but they negligently failed to make a proper investigation, thereby breaching the contract. That as a result of said breach thieves were allowed to enter General's business without fear of apprehension and carry off General's goods, consisting of jewelry valued at $19,000. General prayed for damages in that stated sum. A copy of the contract was filed with the complaint as an exhibit.

American filed an answer which contained an affirmative defense to the effect that the contract contained a clause limiting American's liability to $250, or an amount equal to six monthly payments of $46.30 each, whichever was the lesser, as liquidated damages.

Thereafter, American filed a motion for summary judgment based upon the $250 contractual limitation, and conceded that General was entitled to a judgment for that sum. The motion was supported by unsworn admissions by General in response to requests for admissions which established the execution of the contract shown as an exhibit to the complaint. However, in the unsworn answers to requests for admissions General denied that it agreed to the contractual limitation of liability of $250. Gen-

eral filed no counter affidavit and did not proffer any evidentiary material contemplated by Ind.Rules of Procedure, Trial Rule 56(E). Further, General filed no pleading raising the issues now presented in its brief. It did, however, file an unverified brief in opposition to the motion. After hearing, the trial court granted summary judgment and entered judgment in favor of General in the sum of $250 and costs.

## ISSUES

General presents three issues for review as follows: Did the trial court err in granting a summary judgment in that there was a genuine issue of material fact in determining

   I.  Whether the contract entered into between the parties was conscionable or unconscionable or against public policy;

  II.  Whether American negligently performed the contract;

 III.  Whether the $250 liquidated damage clause in the contract (a) was reasonable in light of damages likely to be suffered by a party in the event of a breach of contract and (b) would have been difficult to ascertain in the event of a breach.

General has not argued these issues separately in its brief so we will discuss them together.

## DISCUSSION AND DECISION

The controversial clause in the contract is number 9, as follows:

"9. It is understood and agreed: That Company is not an insurer; that insurance, if any, shall be obtained by Subscriber; that the payments provided for herein are based solely on the value of the service as set forth herein and are unrelated to the value of the subscriber's property or the property of others located on Subscriber's premises; that Company makes no guarantee or warranty, including any implied warranty of merchantability or fitness that the equipment or services supplied will avert or prevent occurrences or the consequences there-

from which the system or service is designed to detect or avert. Subscriber acknowledges that it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from a failure to perform any of the obligations herein, or the failure of the system to properly operate with resulting loss to Subscriber because of, among other things:

a. The uncertain amount or value of Subscriber's property or the property of others kept on the premises which may be lost, stolen, destroyed, damaged or otherwise affected by occurrences which the system or service is designed to detect or avert;

b. The uncertainty of the response time of any police or fire department, should the police or fire department be dispatched as a result of a signal being received or an audible device sounding;

c. The inability to ascertain what portion, if any, of any loss would be proximately caused by Company's failure to perform or by failure of its equipment to operate;

d. The nature of the service to be performed by Company.

Subscriber understands and agrees that if Company should be found liable for loss or damage due from a failure of Company to perform any of the obligations herein, including but not limited to installation, maintenance, monitoring or service or the failure of the system or equipment in any respect whatsoever, Company's liability shall be limited to a sum equal to the total of six (6) monthly payments or Two Hundred Fifty ($250.00) Dollars, whichever is the lesser, as liquidated damages and not as penalty and this liability shall be exclusive; and that the provisions of this Section shall apply if loss or damage, irrespective of cause or origin, results directly or indirectly to persons or property, from performance or nonperformance of the obligations imposed by this contract, or from negligence, active or otherwise, of Company, its agents, assigns or employees.

In the event that the Subscriber wishes to increase the maximum amount of such liquidated damages, Subscriber may, as a matter of right, obtain from Contractor a higher limit by paying an additional amount proportioned to the increase in liquidated damages."

On the front page of the contract, immediately over the signatures of the parties, there is contained the following paragraph:

"The reverse of this agreement is incorporated herein. Please read carefully. We are not an insurer. Our maximum liability is limited to $250.00. User acknowledges receipt of copy and that he has read and understands reverse side of agreement particularly Paragraph # 9."

We first observe the rules regarding summary judgment. It is true, as argued by General, that summary judgment may be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits and testimony, if any, show that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *Boswell v. Lyon*, (1980) Ind.App., 401 N.E.2d 735. Even if the facts are undisputed, the ability to draw from those facts conflicting inferences, which would alter the outcome, will make the granting of the summary judgment inappropriate. *Letson v. Lowmaster*, (1976) 168 Ind.App. 159, 341 N.E.2d 785. All doubts as to the existence of an issue of material fact must be resolved against the movant. *Raymundo v. Hammond Clinic Association*, (1980) Ind.App., 405 N.E.2d 65. All material on file must be construed in favor of the opponent of the motion. *Waterfield Mortgage Company v. O'Connor*, (1977) 172 Ind.App. 673, 361 N.E.2d 924. The burden is upon the proponent to demonstrate the absence of a material fact. *Raymundo, supra.* Failure to oppose a motion for summary judgment by filing counter affidavits does not thereby render the trial court's action denying the motion improper. *Walker v. Statzer*, (1972) 152 Ind.App. 544, 284 N.E.2d 127.

However, a party against whom a motion for summary judgment is made and proper-ly supported as provided in subsection (E) of T.R. 56, may not rest upon the mere allegations or denials of his pleadings, but his response by affidavits or as otherwise provided by the rule must set forth specific facts showing that there was a genuine issue for trial. *Ryser v. Gatchel*, (1972) 151 Ind.App. 62, 278 N.E.2d 320. We emphasize that no response by General as provided in subsection (E) exists in the record whatever, and the appropriateness of the motion must be determined in light of the bare allegation of the complaint and the terms of the contract itself.

General's sole citation of authority concerning the enforceability of the liquidated damage provision is *Raymundo, supra.* It interprets *Raymundo* as stating:

"[T]he general rule that where the nature of the contract is such that upon a breach thereof, the resulting damage will be uncertain and difficult of proof and the amount of damages fixed by the parties is not greatly disproportionate to the loss likely to be occasioned by the breach, the sum fixed will be considered as liquidated damages and not as a penalty."

General's brief, p. 14. In argument, it merely asserts, in a half-page recitation: (1) there was an issue of fact whether the contract was negligently performed, (2) an issue of fact as to whether General knowingly or intelligently entered into the contract, and (3) whether the contract was unconscionable and against public policy. It then speculates that General could testify at trial that it was not aware of the legal ramifications of a liquidated damage provision. General has not provided the court with adequate citation of authority or cogent argument as required by Ind.Rules of Procedure, Appellate Rule 8.3(A)(7), and this appeal could be terminated here. *Whitaker v. St. Joseph's Hospital*, (1981) Ind.App., 415 N.E.2d 737. Nevertheless we shall address the merits.

The enforceability of limitation of damage clauses involving alarm systems contracts is a question of first impression in Indiana. Authorities cited by American and our own research indicate that a num-

ber of appellate tribunals of other states have addressed the problem and have upheld such clauses. *See Central Alarm of Tucson v. Ganem*, 116 Ariz. 74, 567 P.2d 1203 (1977); *The Morgan Company v. Minnesota Mining & Manufacturing Co.*, (1976) 310 Minn. 305, 246 N.W.2d 443; *Florence v. Merchants Central Alarm Co.*, (1980) 73 App.Div.2d 869, 423 N.Y.S.2d 663; *Reed's Jewelers, Inc. v. ADT Company*, (1979) 43 N.C.App. 744, 260 S.E.2d 107; *First Financial Insurance Co. v. Purolator Security, Inc.*, (1979) 69 Ill.App.3d 413, 26 Ill.Dec. 393, 388 N.E.2d 17; *Pick Fisheries, Inc. v. Burns Electron. Sec. Serv., Inc.*, (1976) 35 Ill. App.3d 467, 342 N.E.2d 105; *Feary v. Aaron Burglar Alarm, Inc.*, (1973) 32 Cal.App.3d 553, 108 Cal.Rptr. 242; *Foont-Freedenfeld Corporation v. Electro-Protective Corporation*, (1973) 126 N.J.Super. 254, 314 A.2d 69; *Wedner v. Fidelity Security Systems, Inc.*, (1973) 228 Pa.Super. 67, 307 A.2d 429; *Alan Abis, Inc. v. Burns Electronics Security Services, Inc.* (1973) La.App., 283 So.2d 822; *Niccoli v. Denver Burglar Alarm, Inc.*, (1971) Colo.App., 490 P.2d 304; *Schepps v. American District Telegraph Co. of Texas*, (1955) Tex.Civ.App., 286 S.W.2d 684.

General has cited no cases contrary to these, and we have found none. These cases base their holding upon one of three closely related legal concepts. Some cases label the clause a "liquidated damage clause." Other cases refer to it as an "exculpatory clause." Yet others designate the clause as a "limitation of liability clause." Regardless of the nomenclature, the clauses in the cases we have examined are similar to the one at bar and have the common purpose of restricting damages to nominal amounts or allowing for no damages whatever. The clauses usually recite that the alarm company is not an insurer and disavows any warranty. It is stated that the contract payments are the value of the services only, and are unrelated to the value of the subscriber's property. It is agreed that it is difficult to fix actual damages, and that it is not the intention of the parties for the alarm company to assume liability for damages. In the event that liability is imposed upon the alarm company the damages are limited to a nominal amount, and in the cases examined this nominal amount varies from $50 to $500. Some of the cases involve a "liquidated damage clause," while others involve "exculpatory" or "limited liability" clauses, or both. Yet others refer to it as a "hold harmless" provision.

The designation given by the parties to the limitation specified in the contract is not conclusive, though such terms are to be considered in construing the contract. *Beiser v. Kerr*, (1939) 107 Ind.App. 1, 20 N.E.2d 666. The contract in the case at bar does characterize the clause as a liquidated damage clause, but the obvious purpose of the clause is to exculpate or to limit damages to a nominal amount, and it cannot be compared with a typical liquidated damages provision which provides for the forfeiture of a stated sum of money upon breach without proof of damages.

It is generally held in Indiana that liquidated damage provisions are enforceable where the nature of the contract is such that upon breach the resulting damages would be uncertain and difficult to ascertain. The sum designated as liquidated damages cannot be grossly disproportionate to the loss that may result, unreasonable or unconscionably in excess of the loss sought to be averted. *Raymundo, supra.* If the sum stipulated is greatly disproportionate to the actual loss and unreasonable, it will be considered a penalty and unenforceable. *Beiser, supra.* It is impossible to lay down any definite rules as to what may or may not be unconscionable, for each case must depend upon its own particular facts. Generally speaking, in determining the reasonableness of the amount, the court will consider the relation of the parties, their situation, the absence or presence of fraud or oppression, and the purpose which the agreement seeks to sustain. *Beiser, supra.*

Indiana, likewise, recognizes exculpatory clauses. Parties are permitted to make such contracts so long as they are knowingly and willingly made and free

from fraud. No public policy exists to prevent such contracts. However, exceptions exist where the parties have unequal bargaining power, the contract is unconscionable, or the transaction affects the public interest such as utilities, carriers, and other types of businesses generally thought to be suitable for regulation or which are thought of as a practical necessity for some members of the public. *Weaver v. American Oil Co.*, (1971) 257 Ind. 458, 276 N.E.2d 144; *LaFrenz v. Lake County Fair Board*, (1977) 172 Ind.App. 389, 360 N.E.2d 605.

■ Also, Indiana, by the enactment of the Uniform Commercial Code (UCC) recognizes clauses in commercial contracts limiting liability. Ind.Code 26–1–2–719(3) provides:

"(3) Consequential damages may be *limited* or *excluded* unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." (Emphasis added.)

The applicability of the UCC to this problem was indicated by the Supreme Court in *Weaver, supra,* when it relied upon Ind. Code 26–1–2–302 in defining an unconscionable contract. We are of the opinion that Ind.Code 26–1–2–719(3) indicates a legislative approval of damages limitation provisions, as here.

■ Our perusal of the above cases and treatises such as 5 Corbin on Contracts § 1068; Murray on Contracts § 234; 5 Williston on Contracts § 781A; Calamari and Perillo, Contracts 2nd Ed. § 14–31 *Liquidated Damages Distinguished from Penalties* ; lead us to the conclusion there is no real distinction for present purposes between a liquidated damage clause, a limited damage clause and an exculpatory clause. The parties have, in each instance, attempted by contract to predetermine the area of risk, and the extent of exposure by contract. Absent the exceptions mentioned above, such agreements are enforceable. As demonstrated, the clause in this particular case is enforceable whether it is labeled a liquidated damage clause, an exculpatory clause, or a limited liability clause. The burden rested upon General to bring into the record, pursuant to T.R. 56(E), facts evidentiary in nature to create the issue of fact which it contends exists here in order to escape the summary judgment. This it has not done. There is nothing in the record, except the bold assertions of General in its brief, touching the subject of whether General knowingly and willingly entered into the contract, or whether the contract was unconscionable and against public policy. Negligence is not an issue because liability was conceded up to $250.

For the reasons stated, this cause is affirmed.

Judgment affirmed.

RATLIFF, P. J., and ROBERTSON, J., concur.