PICK FISHERIES, INC., Plaintiff-Appellant, *v.* BURNS ELECTRONIC SECURITY SERVICES, INC., Defendant-Appellee.

First District (3rd Division) No. 61290

Opinion filed January 22, 1976.

Rudnick, Wolfe, Snyderman & Foreman, of Chicago (Lester D. Foreman, Stanley N. Gore, and Joseph W. Sheyka, of counsel), for appellant.

Epton & Druth, Ltd., of Chicago (Bernard E. Epton and Milton J. Pfetzer, of counsel), for appellee.

Mr. PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Pick Fisheries, Inc., brought an action for damages against defendant, Burns Electronic Security Services, Inc., upon an amended complaint containing a count in tort and one in contract. Plaintiff moved to strike the affirmative defense asserted by defendant that its liability

was limited by a provision in their contract. Plaintiff appeals from the order denying the motion. The issue on appeal is whether the contract clause which purports to limit defendant's liability for damages is valid and enforceable.

The facts indicate that the parties entered into two contracts wherein defendant agreed to install and maintain a central station signaling system which was to transmit signals to defendant's offices in the event plaintiff's premises were burglarized or vandalized. The contracts provide in part that upon receipt of an alarm signal, defendant is obligated to send its representative to plaintiff's premises to await the police or defendant's representative, and if provided with a key, to admit these parties. During the late hours of December 8 or early morning of December 9, 1972, when both contracts were still in effect, plaintiff's premises were allegedly burglarized and $14,635.25 worth of seafood was taken and property damage of $475 was sustained.

Plaintiff received insurance of $10,000 from its theft carrier, and filed an amended complaint and in tort to recover a claimed net loss of $5,110.25, alleging that defendant's failure to perform its duties under the contract prevented arrest of the burglars and recovery of the property. Specifically, it was alleged that defendant failed to send its representatives to the premises for two hours after receiving an alarm; failed to check the building for possible breakins when defendant's representatives did arrive; failed to await or summon the police or plaintiff's representatives; and failed for an unreasonable length of time to install additional alarm systems pursuant to the contract. Transamerica Insurance Company filed an intervening complaint as subrogee under its contract of insurance with plaintiff, praying for judgment against defendant for $10,000. Defendant in its answer to plaintiff's amended complaint denied liability and stated as an affirmative defense that its liability is limited by the following clause which appears as paragraph 10 in both contracts:

"It is understood that the Contractor is not an insurer, that insurance, if any, shall be obtained by the Subscriber and that the amounts payable to the Contractor hereunder are based upon the value of the services and the scope of liability as herein set forth and are unrelated to the value of the Subscriber's property or the property of others located in Subscriber's premises. The Subscriber does not desire this contract to provide for full liability of the Contractor and agrees that the Contractor shall be exempt from liability for loss or damage due directly or indirectly to occurrences, or consequences therefrom, which the service is designed to detect or avert; that if the Contractor should be found

'liable for loss or damage due to a failure of service in any respect, its liability shall be limited to a sum equal to ten percent of the annual service charge or $250, whichever is the greater, and that the provisions of this paragraph shall apply if loss or damage, irrespective of cause or origin, results directly or indirectly to person or property from performance or nonperformance of obligations imposed by this contract or from negligence, active or otherwise, of the Contractor, its agents or employees."
Plaintiff filed a motion to strike the affirmative defense and defendant filed a motion for entry of an order limiting plaintiff's recovery to $250. The order of the trial court from which plaintiff appeals is dated October 21, 1974, and provides in part:

"IT IS HEREBY ORDERED that the court finds that paragraph 10 of exhibit A and B are valid and not against public policy; IT IS FURTHER ORDERED that recovery by the plaintiffs PICK FISHERIES, INC., or TRANSAMERICA INSURANCE COMPANY, Intervening plaintiff, and each of them, is limited to the sum of Two Hundred Fifty Dollars;

THE COURT FURTHER finds that there is no just reason for delaying enforcement or appeal from this order."
Transamerica has not appealed from the order.

Plaintiff contends that the disputed clause is an unenforceable penalty and void by reason of the public policy of Illinois. To distinguish a valid liquidation damages clause from an unenforceable penalty, plaintiff relies on *Bauer v. Sawyer* (1956), 8 Ill.2d 351, 359, 134 N.E.2d 329, which adopted the criteria in section 339 of the Restatement of Law, Contracts, that a predetermined damages provision will be enforced if " * * * (a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.'" Plaintiff argues therefrom that at the formation of the instant contract the probable loss could have been related to a portion of plaintiff's inventory and therefore, the limit on damages is in the nature of a penalty since it bears no relationship to plaintiff's inventory. Plaintiff further argues that the clause is unenforceable because it violates public policy of Illinois by attempting to limit the liability of an entity which performs an important social function. Defendant responds that the clause is similar to exculpatory clauses which have been upheld in Illinois and is a valid liquidated damages clause; that at the time the contract was entered it was impossible to determine probable damages or what might be kept on plaintiff's premises at any given time; and further, that the agreed limitation was reasonable.

The disputed clause in paragraph 10 purports to limit defendant's liability for loss or damage resulting from the performance or nonperformance of the contracts or from defendant's negligence. It sets an upper limit within which damages may be proved and recovered rather than a fixed definite amount which is characteristic of the usual liquidated damage or penalty clause. In oral argument plaintiff conceded that without the contracts there would be no relationship between the parties, and that defendant owed plaintiff no duty other than that created by the contracts. Therefore, whether the count in contract or in tort is considered, the nature of the duty and the consequences of its breach must be determined by reference to such contracts.

The rule in *Bauer v. Sawyer* was previously applied in *Better Food Markets, Inc. v. American District Telegraph Co.* (1953), 40 Cal.2d 179, 253 P.2d 10, 42 A.L.R. 2d 580, which presented facts strikingly similar to the instant case. There, plaintiff-food market sought $35,930 damages allegedly resulting from the failure of defendant, a burglar alarm company, to properly respond to an alarm on plaintiff's food market premises. Defendant interposed the provision of the contract which stated that defendant was not an insurer and that liability was limited to and fixed at $50. A California statute specified that a contract provision for the amount of damages to be paid in the event of breach is void except that the parties by contract may agree upon an amount which shall be presumed to be the amount of damages sustained by a breach when from the nature of the case it would be impracticable or extremely difficult to fix the actual damage. After reciting that it is generally recognized that an agreement for liquidated damages is valid, whereas an agreement for payment of a penalty is invalid, the court there applied the Restatement criteria to uphold the provision, and granted judgment for $50.

Similarly, in a line of cases involving clauses which, as here, purport to *limit* damages in the event of breach, courts have upheld such clauses as not prohibited by public policy where no special relationship exists between the parties, since such parties could have even totally exculpated themselves from negligence. See, *e.g.*, *Shaer Shoe Corp. v. Granite State Alarm, Inc.* (1970), 110 N.H. 132, 262 A.2d 285; *Alan Abis, Inc. v. Burns Electronic Security Services, Inc.* (La.App. 1973), 283 So.2d 822.

■■ Generally, the courts of Illinois give effect to such damage provisions and do not treat them as penalties where the parties have expressed their agreement in clear and explicit terms. (*Burnett v. Nolen* (1949), 336 Ill.App. 376, 84 N.E.2d 155.) If, on the other hand, the clause is deemed inserted merely as a deterrent to prevent a party from breaching the contract and penalizing him for doing so, it will be re-

garded as an unenforceable penalty. (*Giesecke v. Cullerton* (1917), 280 Ill. 510, 117 N.E. 777.) Although where the intention of the parties to approximate anticipated damages is unclear, Illinois courts have indicated they will construe the sum as a penalty (*Arco Bag Co., Inc. v. Facings, Inc.* (1958), 18 Ill.App.2d 110, 151 N.E.2d 438), the modern trend is to give effect to the provision in the absence of fraud or unconscionable oppression (*Heckmann v. Mid States Development Co.* (1965), 60 Ill.App.2d 113, 207 N.E.2d 715). However, there is much contradiction in the case law regarding the distinction between a valid liquidated damages clause and an unenforceable penalty, and each case must be decided according to its own particular facts. *Giesecke v. Cullerton.*

■■ Considering the particular facts of the instant case, we conclude that the clause in question is a valid limitation as to damages and is not a penalty. It is set forth in relatively clear and explicit terms. Although the contract as shown by the record is a short printed form used by defendant, we note that certain of the printed provisions not pertinent here were the subject of negotiation as evidenced by typed and written deletions and additions. However, the clause here challenged was not altered or modified in any manner. Furthermore, as noted earlier, the disputed clause appears in each of the two contracts signed by plaintiff, one of which was in force for more than two years prior to the alleged loss. Here, where is no claim of fraud or overreaching, we cannot say that these parties did not intend to limit damages in the event of breach. Moreover, the parties involved are two corporate entities of equal economic standing, and this particular limitation on damages may be said to represent their reasonable endeavor to pre-estimate a fair compensation. At the time of entering into the contract it would have been difficult to ascertain the extent of a potential loss, or what portion thereof to attribute to defendant's breach of contact. The following statement in *Better Food Markets, Inc. v. American District Telegraph Co.* (1953), 40 Cal.2d 179, 186, 253 P.2d 10, 14-15, 40 A.L.R. 2d 580, 587, is equally persuasive in the instant case:

> "The possibilities of the consequences of a failure of the defendant to perform its obligation under the contract are innumerable. A failure to receive the signals, or to respond to them, or to report them to the plaintiff would be a violation of the agreement. Entrances to the building after working hours might be made by persons having authority as well as by burglars or by persons bent upon mischief. They might or might not cause damage. There might be the theft of a ham, or of a truckload of goods, or the contents of a safe. There might be a breaking in

for the purpose of theft and no theft. If money was taken it might be a few dollars or many thousands. Books might be tampered with, or papers abstracted. Damage might be caused in many ways that were not foreseeable. In short, it was extremely difficult to predict the nature and extent of the loss. Furthermore, there was no way of ascertaining what portion of any loss sustained could be attributed to the defendant's failure to perform. The contract specifically provided that the defendant was not an insurer. Therefore, if it should have fully performed on the contract and a loss resulted nevertheless it could in no way be liable. The parties recognized, then, that losses might have resulted which were not causally connected with the defendant's failure of performance. Where there had been a failure of performance and a loss, what part of that loss could be attributed to the failure of performance; or how much of that loss would have resulted had there not been a failure of performance? Under the complexity of the circumstances in this case the parties could not answer this question. There being no reasonable basis upon which to predict the nature and extent of any loss, or how much of that loss the defendant's failure of performance might account for, it is certain that it would have been 'impracticable or extremely difficult to fix the actual damage' ( Civ. Code, § 1671)."

■■ Plaintiff additionally contends that since defendant provides a valuable social function, the clause is unenforceable as against public policy. "There is no precise definition of public policy, and consequently no absolute rule by which a contract can be measured or tested to determine whether or not it is contrary to public policy. Each case, as it arises, must be judged and determined according to its own peculiar circumstances." ( *Zeigler v. Illinois Trust & Savings Bank* (1910), 245 Ill. 180, 193, 91 N.E. 1041; *First Trust & Savings Bank v. Powers* (1946), 393 Ill. 97, 102, 65 N.E.2d 377.) The questions of public policy raised here are on the one hand that of freedom of contract, and on the other hand, what plaintiff theorizes as something in the social relationship of the parties which militates against upholding the clause. Illinois courts have refused to enforce certain limitations on liability in cases involving common carriers, employers, innkeepers, bailees for hire, and residential landlords, where the parties were unequal in bargaining power or where a social relationship existed between the parties which rendered the contracts unconscionable. The limitation on freedom to contract associated with those five classes of special relationships is reviewed in *Simmons v. Columbus Venetian Stevens Buildings, Inc.* (1958), 20 Ill.App.2d 1,

155 N.E.2d 372. In the case before us, we find no claim of disparity in bargaining power or that the services contracted for could not have been obtained from another source. More significantly, we find that the relationship between these two corporations, which was voluntarily entered into at the time these contracts were negotiated and signed, is not of the semipublic character inherent in those five classes of cases cited above where certain limitations on liability have been held void. We are dealing here with two corporations which voluntarily entered into a contract at arm's length, with full freedom to do so.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed.

Affirmed.

DEMPSEY and McNAMARA, JJ., concur.