PUROLATOR SECURITY, INC., *et al.*, Plaintiffs-Appellants, v. WELLS FARGO ALARM SERVICE, Defendant-Appellee.

First District (1st Division)  No. 83—2750

Opinion filed March 24, 1986.

Hamman, Benn & Miller, of Chicago (Marvin N. Benn and Wayne H. Michaels, of counsel), for appellants.

Epton, Mullin, Segal & Druth, Ltd., and Peterson, Ross, Schloerb & Seidel, both of Chicago (David C. Lechner, Roger A. Bixby, and J. Robert Geiman, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:*

Plaintiffs, Purolator Security, Inc. (Purolator), and its insurer, Commercial Union Assurance Companies, filed a two-count negligence action in the circuit court of Cook County against defendant, Wells Fargo Alarm Service, claiming that defendant had breached its duty to provide alarm service to Purolator. Count I alleged common law negligence and sought damages in the amount of $2,300,000 for non-reimbursed losses incurred by Purolator when its offices were burglarized and cash in excess of $4,000,000 was taken. Count II alleged gross negligence and sought punitive damages in the amount of $2,500,000 in addition to recovery of the nonreimbursed losses. Plaintiffs appeal the grant of defendant's motion for summary judgment which was predicated on the contention that the liquidated damages

---

*Justice McGloon heard the oral argument in this case, and following his retirement, Justice Quinlan was substituted, listened to the tapes of oral argument and read the briefs and record, and concurs in the opinion.

provision in its contract with Purolator's predecessor company, Armored Express Company (Armored Express), limited its liability to $50. For the reasons that follow, we affirm the judgment of the circuit court.

The record reveals the following facts pertinent to this appeal. On January 12, 1968, Armored Express and Central Watch Service (Central), defendant's predecessor company, entered into a written agreement (1968 contract) whereby Central was to install a burglar alarm system on the premises of Armored Express and to assume the duties of monitoring that system, *i.e.*, send guards to the premises of Armored Express in the event of an alarm and transmit the alarm to the municipal police department. The 1968 contract was terminable at the end of five years (February 1973) provided that the party who desired to terminate the contract gave 30 days' prior written notice to the other. Absent such notice prior to the expiration of the five-year term, the contract would remain in full force and effect until 30 days' written notice was given by either party to the other anytime thereafter. In January 1973, Armored Express was acquired by Purolator and Central was acquired by defendant.

Purolator alleged that prior to the five-year termination date, Russell Hardt, its vice-president of terminal operations, received a letter from Bud Keating, general manager of defendant, terminating the 1968 contract and proposing a new contract, copies of which were enclosed. Defendant denied that a termination letter had been sent to Purolator at that time, but admitted that a proposed new contract had been sent for Purolator's approval. Because Hardt was not authorized to approve modification of the contract, he forwarded a copy of the proposed contract to Purolator's attorney, William Fullingim, for review. In a memo dated February 8, 1973, Fullingim advised Hardt not to sign the renewal contract unless those sentences limiting defendant's liability to $250 in the event of negligent installation and maintenance of the alarm system were deleted. In Fullingim's opinion, there should be no limitation on liability in the event of defendant's negligence.

On February 14, 1973, Hardt informed Keating in writing of Fullingim's request that the limitation of liability in the event of defendant's negligence be deleted. At the end of the letter, Hardt stated, "Until we hear from you, we understand that our old contract shall continue in force." No agreement was ever reached regarding the terms of the proposed contract, and it was never signed. Instead, defendant continued to provide alarm system services to Purolator and Purolator continued to pay defendant for the services pursuant to

the terms of the 1968 contract, as amended by previously executed riders.

On September 24, 1974, Roy Anderson, Purolator's manager of administrative service, notified defendant by telephone that Purolator was terminating the 1968 contract, effective as of October 30, 1974. This telephone conversation was subsequently verified in a letter dated September 26, 1974. On October 20, 1974, Purolator was burglarized and over $4,000,000 in cash was taken. In a letter dated October 25, 1974, Hardt informed defendant that it was to ignore Anderson's prior cancellation notice and that Purolator wished "to continue having Wells Fargo provide our alarm service." As a result, defendant and Purolator continued their on-going business relationship. Several months later, in a letter dated January 20, 1975, defendant notified Purolator that it was exercising its right to terminate the 1968 contract, effective February 28, 1975.

On October 26, 1977, Purolator filed its two-count complaint against defendant in the circuit court of Cook County, alleging common law negligence and gross negligence. Specifically, Purolator alleged in count I that defendant had breached its duty to Purolator on the date of the burglary by its: (1) failure to adequately respond to the alarm system warning light which had been activated; (2) failure to adequately respond to the alarm system warning buzzer; (3) failure to send an agent to Purolator's premises when the warning light and buzzer were activated; and (4) failure to inform, alert or call either Purolator or a law enforcement officer when the warning light and buzzer were activated. Count II realleged the allegations of count I and added that defendant's actions and inactions were the result of a wilful disregard of its duty toward Purolator and constituted gross negligence.

Pursuant to section 1441 of title 28 of the United States Code (28 U.S.C. sec. 1441 (1976)), defendant removed the cause to the Federal district court and filed motions to dismiss and, in the alternative, for summary judgment, predicated on the liquidated damages provision in the 1968 contract. The district court, finding that the contract executed by the predecessor companies of the parties was in effect at the time of the burglary and that the liquidated damages provision relied upon by defendant was valid, denied defendant's motion to dismiss, but granted its motion for summary judgment as to all but $50 of Purolator's claim. Plaintiffs appealed, and the Seventh Circuit Court of Appeals dismissed the appeal on the ground that it lacked jurisdiction and remanded the cause to the circuit court.

Upon remand, defendant again filed motions to dismiss and, in

the alternative, for summary judgment based upon the liquidated provision. The trial court found that there was a valid contract between the parties on the date of the burglary and granted defendant's motion for summary judgment. On plaintiffs' motion for clarification of the court's order, the trial court entered an agreed order stating that its original decision "was based solely on its finding that the 1968 contract was valid and in effect on [the date of the burglary] and that no ruling has been made by this Court respecting defendant's arguments on economic loss in tort or *res judicata*." Plaintiffs' timely appeal followed.

The sole issue on appeal is whether the trial court erred in granting summary judgment on the issue of the validity of the 1968 contract and its liquidated damages provision. Plaintiffs contend that there remains a genuine issue of fact as to "whether any express contract existed between the parties at the time of the burglary *** or whether there was merely an implied contract dictated by the parties' conduct." Plaintiffs further contend that the liquidated damages provision in the 1968 contract "is at best ambiguous and susceptible of several different meanings," which necessitates the court's consideration of "extrinsic evidence to construe the terms of the contract and determine the true intent of the parties."

■■ We have carefully reviewed the record and conclude that there is no evidence to support plaintiffs' contention that the 1968 contract was not in effect at the time of the burglary. The 1968 contract contained a provision which allowed for termination of the contract upon 30 days' written notice by either party to the other, either prior to expiration of the original five-year term or anytime thereafter. Although Russell Hardt, vice-president of terminal operations for Purolator, stated in his affidavit that he had received a termination letter from defendant in late January 1973, defendant denied that such a letter was sent and there is no evidence in the record to support Hardt's statement. To the contrary, the record contains a letter dated February 4, 1973, from Hardt to defendant, which expressly states that Purolator understood that the 1968 contract remained in full force and effect. In addition, Hardt's letter to defendant, dated October 25, 1974, revoked a previous communication from Purolator which was intended to terminate the 1968 contract at a specified future date. Finally, defendant's letter to Purolator, dated January 20, 1975, which notified Purolator of defendant's desire to terminate the 1968 contract, effective February 28, 1975, further contradicts Purolator's contention that the 1968 contract had expired prior to the burglary. Accordingly, we concur with the trial court that the 1968 con-

tract was in full force and effect on October 20, 1974, the date of the burglary.

■■ With respect to plaintiffs' contention that the liquidated damages provision of the 1968 contract was ambiguous, it is well established that assertions by parties that contrary meanings can be given to contract provisions are not determinative of whether those provisions are ambiguous. The issue of whether ambiguity exists is a question of law to be determined by the court. (*Board of Education v. Chicago Teachers Union, Local 1* (1980), 89 Ill. App. 3d 861, 412 N.E.2d 587.) If the contract terms are found to be clear and unambiguous, they must be given their ordinary and natural meaning, and no parol or extrinsic evidence may be considered to vary the meaning of the terms. *Susmano v. Associated Internists of Chicago, Ltd.* (1981), 97 Ill. App. 3d 215, 422 N.E.2d 879.

The liquidated damages provision contained in the 1968 contract stated:

> "It is agreed by and between the parties hereto that Central [defendant] is not an insurer and that the payments hereinbefore named are based solely on the value of the service in the operation of the system described and in case of failure to perform such service and a resulting loss, its liability hereunder shall be limited to and fixed at the sum of Fifty ($50.00) Dollars as liquidated damages, and not as a penalty, and this liability shall be exclusive."

■■■ ■ Purolator contends that because defendant failed to mention "negligence" in the liquidated damages provision, negligence was not intended to be included or, in the alternative, it is unclear whether negligence was intended to be included. Contrary to Purolator's position, it is well settled that a direct reference to "negligence" is not required in an exculpatory clause. (*Berwind Corp. v. Litton Industries, Inc.* (7th Cir. 1976), 532 F.2d 1.) Pursuant to the terms of the 1968 contract, defendant agreed to furnish an alarm service and to maintain that service in good working order. The contract further provides that the integral components of the alarm service are: (1) properly functioning equipment, and (2) responsive personnel. The liquidated damages provision of the 1968 contract explicitly limits defendant's liability to $50 "in case of failure to perform such service." The limitation on liability is not confined to one aspect of the service. Instead, it refers to "service" in general; *i.e.*, equipment and personnel. Thus, if either component of the service fails for whatever reason, defendant's liability is limited to $50. In our opinion, the provision is not ambiguous. Consequently, it must be given its ordinary

and natural meaning and evidence as to subsequent acts by the parties as indicative of contrary intent is irrelevant.

■ Having established that the liquidated damages provision encompassed acts of negligence, we now consider the validity and enforceability of the provision. As a general rule, Illinois courts give effect to liquidated damages provisions if: (1) the parties have expressed their agreement in clear and explicit terms; and (2) there is no evidence of (a) fraud or unconscionable oppression (*Pick Fisheries, Inc. v. Burns Electronic Security Service, Inc.* (1976), 35 Ill. App. 3d 467, 342 N.E.2d 105); (b) a legislative directive to the contrary; or (c) a special social relationship between the parties of a semipublic nature. *First Financial Insurance Co. v. Purolator Security, Inc.* (1979), 69 Ill. App. 3d 413, 388 N.E.2d 17.

■ Applying the above legal principles to the case at bar, we conclude that the provision in question is a valid limitation as to damages for defendant's failure to provide the alarm service. First, as previously discussed, the terms of the provision are clear and explicit. Second, there have been no allegations of fraud or oppression. Third, there has been no legislation promulgated which would bar defendant from contracting for a limitation on damages predicated upon economic loss. (*Cf.* Ill. Rev. Stat. 1983, ch. 71, par. 1 *et seq* (innkeepers); Ill. Rev. Stat. 1983, ch. 26, art. 7 (professional bailees); Ill. Rev. Stat. 1983, ch. 80, par. 91 (landlords); and Ill. Rev. Stat. 1983, ch. 29, par. 61 (building contractors).) Finally, the special social relationship argument was specifically rejected by this court in *Pick Fisheries, Inc. v. Burns Electronic Security Services, Inc.* (1976), 35 Ill. App. 3d 467, 342 N.E.2d 105, a case factually similar to the one at bar.

In *Pick Fisheries, Inc.*, the parties entered into two contracts wherein defendant agreed to install and to maintain a central station signalling system which was to transmit signals to defendant's offices in the event plaintiff's premises were burglarized or vandalized. While the contracts were in effect, plaintiff's premises were burglarized and $14,635.25 worth of seafood was taken and property damage of $475 was sustained. Plaintiff received $10,000 from its insurance company and filed an action in tort against defendant to recover a claimed net loss of $5,110.25. Plaintiff alleged that defendant had failed to perform its duties under the contract, *i.e.*, send a representative to the premises upon receiving an alarm; check the building for possible breakins; await or summon the police or plaintiff; and install additional alarm systems within a reasonable time. Defendant denied liability and relied upon the liquidated damages provision as an affirmative defense. The trial court denied plaintiff's motion to strike the

affirmative defense and granted defendant's motion for entry of an order limiting plaintiff's recovery to the stated liquidated damages amount.

■■ In affirming the trial court's order, the appellate court in *Pick Fisheries, Inc.* found that the voluntary contractual relationship between the two corporations was not of the semipublic type where limitations of liability had been held void. Instead, the court found that the corporations were of equal economic standing and had voluntarily entered into the agreement which included a particular limitation on damages. In our view, the case at bar presents a comparable situation. Therefore, based upon the aforementioned, we conclude that the liquidated provision of the 1968 contract was valid and enforceable.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

BUCKLEY, P.J., and QUINLAN, J., concur.