NORTH RIVER INSURANCE COMPANY, as Subrogee, *et al.*, Plaintiffs-Appellants, v. JAMES O. JONES, Indiv. and d/b/a Brunderman Electric Company, *et al.*, Defendants-Appellees.

First District (3rd Division)   Nos. 1—92—1498, 1—92—2737 cons.

Opinion filed August 30, 1995.

Crotty & Chacon, of Chicago (James T. Crotty, Zacarias R. Chacon, and Deborah J. Allen, of counsel), for appellants North River Insurance Company and International Insurance Company.

Keck, Mahin & Cate, of Chicago (Robert E. Arroyo and Barbara J. Mulvanny, of counsel), for appellee Holmes Protection of Illinois, Inc.

Edward J. Burke, Mary Patricia Burns, and Mary Ann Murray, all of Burke, Burns, Ellison & Pinelli, and Edward A. Butts and Patrick J. Kilroy, Jr., both of Illinois Bell Telephone Company, both of Chicago, for appellee Illinois Bell Telephone Company.

Michael Resis and Ellen L. Karecki, both of Querrey & Harrow, Ltd., of Chicago, for appellee API Alarm Systems, Inc.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiffs North River Insurance Company (North River) and International Insurance Company (International) brought this action as subrogee of their insureds to recover damages resulting from the defendants' alleged negligence involving a fire alarm system that did not function during a fire that caused substantial damage and loss to the insureds' property and its contents. Defendants Holmes Protection of Illinois, Inc., API Alarm Systems, Inc., and Illinois Bell Telephone Company filed motions to dismiss, which were granted. Plaintiffs have appealed from the dismissals. We affirm.

The center point of this case is property located at 1700 N. Hinman Avenue in Evanston, Illinois, owned by Stephen and Barbara Byer, as beneficial owners of a land trust. On the premises was located the Byer Museum of the Arts and a business known as Stephen Byer & Associates. On February 1, 1982, Holmes Protection of Illinois, Inc., signed a sale and service agreement contract (the Contract) with Stephen Byer, as president of Byer Museum of the

Arts (the Museum) to furnish, install and provide maintenance service for a fire alarm system (alarm system) at 1700 N. Hinman Avenue. API Alarm Systems, Inc., purchased the assets and business of Holmes Protection of Illinois, Inc., by an agreement dated October 12, 1984, and is the successor corporation. Hereafter, the successor corporation and its predecessor will collectively be referred to as Holmes.

The alarm system was not limited to the portion of the building used by the Museum, but instead covered all areas of the property on the premises. The Contract for the alarm system provided that Holmes was not an insurer. It also contained a limitation of damages clause that limited any liability on Holmes' part, whether based on breach of contract or negligence, to $250. The Contract, however, provided an option for additional liability by Holmes if the purchaser wished to pay for such additional coverage. Stephen Byer declined to exercise the option. Although there were riders to the Contract, none of the riders modified or otherwise altered the limitation of damages provision or other pertinent provisions in the Contract.

Specifically, the Contract states:

"Purchaser acknowledges that Holmes is not an insurer; that insurance shall be obtained by Purchaser, if any is desired; that the sums payable hereunder to Holmes by Purchaser are based upon the value of services offered and the scope of liability undertaken, and such sums are not related to the value of the property belonging to Purchaser or to others located in or adjacent to the Purchaser's premises. Purchaser does not seek indemnity by this agreement from Holmes against any damage or losses caused by hazards to such property. Holmes makes no presentation or warranty, and expressly disclaims any warrant, express or implied, of merchantability, fitness or otherwise, and Purchaser relies on no representation or warranty, express or implied, that the system it installed or the services it furnishes will avert or prevent occurrences, or the consequences therefrom, which the system and services are designed to detect. Purchaser agrees that Holmes shall not be liable for any of Purchaser's losses or damages irrespective of origin, to person or property, whether directly or indirectly caused by performance or non-performance of obligations imposed by this contract or by negligent acts or omissions by Holmes, its agents or employees and further agrees that the amounts payable by the Purchaser are not sufficient to warrant Holmes assuming such liabilities or any risk of consequential or other damage. Holmes will, however, by amendment give the Purchaser the option to pay an annual service charge consonant with additional liability. Unless the Purchaser has elected to pay such increased

annual service charge by executing an amendment to the agreement, the Purchaser does not desire this contract to provide for such indemnification by Holmes and the Purchaser does hereby waive and release any rights of recovery against Holmes that it may have hereunder. In view of the nature of the business of Holmes and the hazards involved and it being difficult to foresee the type and extent of losses that may arise from a breach of this agreement or negligence on the part of Holmes, it is agreed that if Holmes should be found liable for loss or damage due to a failure on the part of Holmes or its systems, in any respect, its liability shall be limited to the refund to the Purchaser of an amount equal to the lesser of $250 or 10% of the annual service charge, as liquidated damages and not as a penalty, and this liability shall be exclusive. The Purchaser acknowledges that he has read and understands the terms of this agreement, including the terms of the reverse side hereof."

Since the Contract provides "that insurance shall be obtained by Purchaser, if any is desired," fire loss insurance policies were obtained to cover any damages or losses suffered by fire on the premises. North River issued a fire loss insurance policy covering the building and personal property on the premises. The named insureds in the insurance policy are the "Byer Museum of the Arts" and "Stephen Byer & Associates 1700 Hinman Avenue, Evanston, Illinois." The policy includes as "Additional Insureds: Chicago Title & Trust Co. (as trustee under a land trust), and First National Bank and Trust Co. of Evanston (as mortgagor of the property); Stephen B. and Barbara L. Byer."

In addition, International issued a reinsurance "Mini-Computer/ Word Processor Policy" covering fire loss on the premises. The named insureds on the policy are Byer Museum of the Arts and Stephen Byer & Associates. Also, International issued an "Inland Floater Policy" for "Museum Collections Coverage," which includes fire loss coverage on the premises for "property of rarity or of artistic, scientific or historical significance." The named insureds on the latter policy were Byer Museum of the Arts and Stephen Byer & Associates; by an endorsement, the named insureds on the policy were amended to read Byer Museum of the Arts and Stephen B. and Barbara L. Byer.

On December 31, 1984, two years after the alarm system was installed, a fire occurred causing substantial damage to the property on the premises and its contents. As a result, the insureds submitted joint proofs of loss to North River and International. It is undisputed that the insureds were treated as one entity for purposes of claims adjustment.

North River and International denied coverage for the loss, contending that the amounts of the claims that were filed by the insureds were fraudulent. They then filed a lawsuit contesting coverage based on the alleged fraud by the insureds. After a judgment was entered in favor of the insureds and against North River and International, a settlement was reached in the approximate amount of $3.5 million.

The present action was then filed by North River and International against Holmes and Illinois Bell, and other defendants, to recover from defendants the settlement money that was paid by North River and International to their insureds. As to defendant Holmes, the trial court entered summary judgment in favor of Holmes, ruling that the limitation of damages clause in the Contract is applicable to the case. The trial court then dismissed the action after Holmes deposited $250 with the trial court, which is the maximum amount of Holmes' liability under the limitation of damages clause in the Contract.

As to defendant Illinois Bell, the trial court dismissed the action because the amendment to the second amended complaint fails to state a cause of action against Illinois Bell. As to the other defendants that were named in North River and International's pleadings, they were dismissed by the trial court and are not part of this appeal.

■ We first address North River and International's arguments relating to Holmes. North River and International contend that the limitation of damages clause in the Contract is an exculpatory clause and is therefore void pursuant to the Construction Contract Indemnification for Negligence Act (the Act) (740 ILCS 35/1 (West 1992)). The Act provides:

> "With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable." 740 ILCS 35/1 (West 1992).

North River and International argue that in enacting the Act, "the legislature manifested a clear intent to void exculpatory clauses that purport to hold a person harmless from his own negligence in construction related activities," and that the Act "expresses the Legislature's policy of motivating contractors to take all necessary precautions for the safety of construction workers and the general public." While we agree with plaintiffs' general propositions *vis-a-vis* the Act, it is clear that the Act is not applicable to this case.

■ North River and International do not refer us to any case, and we do not know of any case, in which a court has held that the Act is applicable to alarm systems contracts to protect property, after installation of an alarm system is completed. The reason that no court has held that the Act is applicable under such circumstances is because the Act is intended and serves to protect construction workers in the construction industry and the public as well from the dangers associated with construction work. Contrariwise, once the alarm system is installed, alarm systems contracts are to protect property and people *after* the construction work is completed. Thus, the Act and alarm systems contracts do not serve the same purpose.

It follows that alarm systems contracts are not covered under the Act after the alarm system is installed. Rather, for incidents that occur after the alarm system is installed, alarm systems contracts fall under the tenet that parties are free to contract as they wish, and the contract that they freely enter into will be enforced unless, unlike the present case, it would be against the settled public policy of the State to do so, or there is something in the social relationship of the parties to the contract militating against upholding the agreement.

A case on point is *Purolator Security, Inc. v. Wells Fargo Alarm Service* (1986), 141 Ill. App. 3d 1106, 491 N.E.2d 161. In *Purolator*, the court upheld the enforcement of a $50 limitation of damages for liability clause in an alarm systems contract, where the plaintiff sought compensatory damages in the amount of $2,300,000. The *Purolator* court recognized that the Act is not applicable to alarm systems contracts after the alarm system is installed. The court stated:

> "Having established that the liquidated damages provision encompassed acts of negligence, we now consider the validity and enforceability of the provision. As a general rule, Illinois courts give effect to liquidated damages provisions if: (1) the parties have expressed their agreement in clear and explicit terms; and (2) there is no evidence of (a) fraud or unconscionable oppression (*Pick Fisheries, Inc. v. Burns Electronic Security Service, Inc.* (1976), 35 Ill. App. 3d 467, 342 N.E.2d 105); (b) a legislative directive to the contrary; or (c) a special social relationship between the parties of a semipublic nature. *First Financial Insurance Co. v. Purolator Security, Inc.* (1979), 69 Ill. App. 3d 413, 388 N.E.2d 17.
>
> Applying the above legal principles to the case at bar, we conclude that the provision in question is a valid limitation as to damages for defendant's failure to provide the alarm service. First, as previously discussed, the terms of the provision are clear and explicit. Second, there have been no allegations of fraud or op-

pression. Third, there has been no legislation promulgated which would bar defendant from contracting for a limitation on damages predicated upon economic loss. (*Cf.* Ill. Rev. Stat. 1983, ch. 71, par. 1 *et seq.* (innkeepers); Ill. Rev. Stat. 1983, ch. 26, art. 7 (professional bailees); Ill. Rev. Stat. 1983, ch. 80, par. 91 (landlords); *and Ill. Rev. Stat. 1983, ch. 29, par. 61 (building contractors).*) Finally, the special social relationship argument was specifically rejected by this court in *Pick Fisheries* [citation], a case factually similar to the one at bar." (Emphasis added; the Act is formerly Ill. Rev. Stat. 1983, ch. 29, par. 61.) 141 Ill. App. 3d at 1112, 491 N.E.2d at 164.

In *First Financial Insurance Co. v. Purolator Security, Inc.* (1979), 69 Ill. App. 3d 413, 417-18, 388 N.E.2d 17, 21, the court also recognized that the Act is not applicable to alarm systems contracts after the alarm system is installed. In that case, the court stated:

"In keeping with the principle of freedom of contract, contractual limitations are generally held valid in this State (see *Schumann-Heink v. Folsom* (1927), 328 Ill. 321, 159 N.E. 250; *Pick Fisheries, Inc. v. Burns Electronic Security Services, Inc.* (1976), 35 Ill. App. 3d 467, 342 N.E.2d 105), unless it would be against the settled public policy of the State to do so, or there is something in the social relationship of the parties to the contract militating against upholding the agreement (*Jackson v. First National Bank* (1953), 415 Ill. 453, 114 N.E.2d 721).

It has been held that in the absence of a legislative directive to the contrary, exculpatory provisions must be deemed valid and enforceable. (*Erickson v. Wagon Wheel Enterprises, Inc.* (1968), 101 Ill. App. 2d 296, 242 N.E.2d 622; *Owen v. Vic Tanny's Enterprises* (1964), 48 Ill. App. 2d 344, 199 N.E.2d 280.) For example, our legislature has declared it against the public policy of this State for innkeepers (Ill. Rev. Stat. 1977, ch. 71, par. 1 *et seq.*), professional bailees (Ill. Rev. Stat. 1977, ch. 26, par. 7—204), landlords (Ill. Rev. Stat. 1977, ch. 80, par. 91), *and building contractors (Ill. Rev. Stat. 1977, ch. 29, par. 61),* to be exculpated from liability for their negligence in certain circumstances.

Where the legislature has not acted, an exculpatory clause will be held invalid only if a special social relationship of a semipublic nature is found to permeate the transaction between the parties. ***

In *Pick Fisheries, Inc. v. Burns Electronic Security Services, Inc.* (1976), 35 Ill. App. 3d 467, 342 N.E.2d 105, involving a contract for alarm protection services similar to the contract in the instant case, the court rejected the plaintiff's contention that a liquidated damage provision in the contract was unenforceable as against public policy." (Emphasis added.) 69 Ill. App. 3d at 417-18, 388 N.E.2d at 20-21.

Applying the expressions in *Purolator* and *First Financial Insurance* to the present case, and the principles we have stated, we reject the contention of North River and International that the Act is applicable to this case. The Act plainly does not apply to alarm systems contracts for incidents that occur after the alarm system is installed.

■ North River and International next contend that "even if the exculpatory clause is not void, the clause has no force or effect on plaintiffs' claims through their subrogor/assignors other than Byer Museum of the Arts." North River and International state, "as previously discussed, the Sale and Service Agreement was entered into only by Byer Museum of the Arts," and "thus, regardless of the validity of the exculpatory provision as to Byer Museum of the Arts, the provision clearly has no effect upon the other injured parties through whom the Insurers also seek recovery in this litigation." For purposes of clarification, the "other injured parties" to whom North River and International refer in their brief include subrogor Stephen Byer, Barbara Byer, Stephen Byer & Associates, Chicago Title & Trust Co. and First National Bank and Trust Company of Evanston.

North River and International's contention is untenable. It is undeniable that the alarm system contract that is involved in this case relates solely to the premises and property on the premises at 1700 N. Hinman Avenue. Thus, Holmes' duty and limitation on its liability under the Contract relate to the specific premises and the property thereon regardless of who may have legal title to the premises or the property located on the premises. Indeed, the Museum, which was the other party to the Contract with Holmes, did not and does not even own the building or much of the property that was damaged or destroyed by the fire.

Since it is clear that nothing other than property located on the premises at 1700 N. Hinman Avenue was damaged or destroyed in the fire that forms the basis of this case, Holmes' duty and limitation on its liability under the Contract are applicable to the claims of all the subrogors and subrogees. The duty and limitation on liability under the Contract for damage or loss involving property on the premises involved in the Contract cannot be separated by virtue of who may have legal title to the property. See *Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 391, 493 N.E.2d 1022, where the court stated that the limitation of damage provision in an alarm systems contract "may be construed to apply to actions in contract or in tort, but it clearly and expressly applies only to [the signator] and possibly to the property of others located on [the signator's] premises." The *Scott & Fetzer* court held: "These provisions indicate" that the alarm system company's liability "is limited in actions

brought by [the signator] or some party who had property stored in [the signator's] portion of the warehouse." 112 Ill. 2d at 396, 493 N.E.2d at 1030.

Moreover, as the Contract repeatedly emphasizes, Holmes did not undertake to insure anyone in case of a fire or underwrite any risk of loss. The compensation received by Holmes under the Contract is unrelated to the value or ownership of the property on the premises. This was clearly understood by everyone that is involved in this case as demonstrated by the fact that the subrogors jointly obtained insurance from North River and International to cover any losses from a fire on the premises. Unlike the insurance contracts that North River and International had with their subrogors, the Contract in this case did not insure the Museum or anyone else for fire loss.

It follows that North River and International's contention that Holmes cannot rely on the limitation of damages provision in the Contract as to the "other subrogors" is unavailing. The Contract, with its limitation of damages provision, applied to the premises and the property on the premises regardless of who held legal title to the same. There is no merit to North River and International's contention that the limitation of damages provision in the Contract does not apply to them or their subrogors other than the Museum.

Next, North River and International contend that Holmes "must be deemed to have admitted liability by depositing the full amount ostensibly owed with the court." North River and International state: "Once the trial judge had rendered decisions enforcing the Exculpatory Clause against all injured parties, the Alarm Companies filed a Motion to Dismiss Upon Deposit on Funds. The gist of that motion was that the Alarm Companies would tender the amount of $250 to the trial court and the trial court would, on the grounds that the action was moot, dismiss the Insurers' Complaint with prejudice." North River and International extrapolate from the fact that Holmes deposited the $250 with the trial court that Holmes admitted liability for all of North River and International's claims. North River and International's contention is unfounded.

The trial court ruled that the liability of Holmes was limited to $250 pursuant to the limitation of damages clause in the Contract. Without admitting liability, Holmes tendered payment of that amount, which North River and International refused to accept. The amount was then deposited with the trial court. It follows that the trial court thereafter properly granted Holmes' motion to dismiss on the basis of mootness, but there was no admission of liability on Holmes' part.

■ A moot controversy is one which once existed, but which,

because of the happening of an event, has ceased to exist and no longer presents an actual controversy between the parties. (*Shifris v. Rosenthal* (1989), 192 Ill. App. 3d 256, 261, 548 N.E.2d 690, 693.) Here, it is manifest that North River and International's action became moot when the $250 liquidated damages was deposited with the court. (See *Walters v. Midland-Ross Corp.* (1983), 116 Ill. App. 3d 324, 327, 452 N.E.2d 90, 92.) North River and International's contention that the $250 deposit with the court was an admission of liability is plainly untenable. The deposit was made pursuant to the trial court's rulings that the limitation of damages clause in the Contract was valid and enforceable against North River and International. The deposit was not an admission of liability but rather, compliance with the trial court's rulings, which rendered North River and International's action moot.

We next address North River and International's action against Illinois Bell. In their amendment to the second amended complaint, North River and International charge that Illinois Bell owned telephone circuit lines that were a component part of the alarm system that provided protection to the Museum and its contents. Further, North River and International charge that prior to the fire Illinois Bell was notified of a fault or defect in the circuit lines that were part of the alarm system and that "as a result of Illinois Bell's acts and omissions, the alarm system was unable to transmit a fire alarm on December 31, 1984, and fire fighting authorities were deprived of any alarm or warning whatsoever." North River and International then charge that "as a result the Byer Museum suffered substantial damage."

■ North River and International's action against Illinois Bell is premised on section 5—201 of the Illinois Public Utilities Act (Act) (220 ILCS 5/5—201 (West 1992)). That section of the Act provides:

"In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the [Illinois Commerce] Commission, issued under authority of this Act, the public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example by the way of punishment." 220 ILCS 5/5—201 (West 1992).

The trial court considered the Act but dismissed North River and

International's action against Illinois Bell, ruling that "the limitation of liability clause in Bell's tariff bars recovery for all losses resulting from interruptions in service."

Illinois Bell is required to file a tariff with the Illinois Commerce Commission. A tariff is a public document setting forth services being offered, rates and charges with respect to services and governing rules, regulations and practices relating to those services. See Black's Law Dictionary 1306 (5th ed. 1979).

■ The tariff that Illinois Bell filed with the Illinois Commerce Commission describes the "terms and conditions" under which it will provide services. (220 ILCS 5/13—501 (West 1992).) The Act requires Illinois Bell to list in its tariff all "regulations" that "in any manner" affect the rates charged for its services. (220 ILCS 5/13—503 (West 1992).) One of the "terms and conditions" in Illinois Bell's tariff, for the past 50 years, is the limitation of liability provision for damages resulting from service interruptions. Once a tariff is implemented, Illinois Bell is forbidden from deviating from its terms. It is the filed tariff that defines the scope of duty owed by Illinois Bell. The source of any duty of Illinois Bell, as a public utility to is subscribers, is only in the tariff as filed. *J. Meyer & Co. v. Illinois Bell Telephone Co.* (1980), 88 Ill. App. 3d 53, 55, 409 N.E.2d 557, 559; *Sarelas v. Illinois Bell Telephone Co.* (1963), 42 Ill. App. 2d 372, 375, 192 N.E.2d 451, 453.

The limitation of liability clause in the tariff that Illinois Bell filed with the Illinois Commerce Commission provides:

> "The liability of the Company for damages arising out of mistakes, omissions, interruptions, delays, errors or defects in transmission occurring in the course of furnishing service *** shall in no event exceed an amount equivalent to the proportionate charge to the customer for the period of service during which such mistake, omission, interruption, delay, error or defect in transmission occurs. No other liability shall in any case attach to the Company." Illinois Bell Telephone Company Tariff, Illinois Commerce Commission, No. 5, pt. 1, § 5, par. 3.1.

On appeal, North River and International contend that "Illinois Bell's tariff is not a defense to an action under the Illinois Public Utilities Act," and that "Illinois Bell's tariff is unreasonable and contrary to public policy."

During the pendency of the present appeal, the supreme court decided *In re Illinois Bell Switching Station Litigation* (1994), 161 Ill. 2d 233, 641 N.E.2d 440, which is dispositive of the present appeal as to Illinois Bell. Like the present case, *In re Illinois Bell Switching* involved the Act and the limitation of liability in Illinois Bell's tariff. The supreme court stated:

"Plaintiffs contend that Bell's tariff, filed with the Commission in accordance with the Act, is actually in contravention of the Act and therefore does not protect Bell from liability for interruption in service. Moreover, although the tariff, which describes the 'terms and conditions of service,' preempts any contract expectancy from customers and contains an exculpatory clause which bars recovery for consequential damages due to interruptions in service, plaintiffs maintain that it is against public policy and should not bar plaintiffs' claims.

In response, Bell contends that the tariff is not against public policy and, further, that the tariff, accepted by the legislature for 50 years, legally defines the limits of its liability for interruptions in service. Consequently, Bell maintains that the tariff bars plaintiffs' claims." (161 Ill. 2d at 242-43, 641 N.E.2d at 444-45.)

The supreme court then held:

"We hold that the exculpatory language in Bell's tariff properly limits claims from disruption of service to a rebate of the costs for the missed service. This language, accepted for decades by the General Assembly, is neither in contravention of the Act passed by that same body, the rules passed by the Commission (an agency of that body), nor against public policy. Plaintiffs' claims are therefore barred." 161 Ill. 2d at 244, 641 N.E.2d at 445.

Pursuant to *In re Illinois Bell Switching*, we hold that North River and International's claims against Illinois Bell are barred. The trial court properly dismissed North River and International's actions against Illinois Bell.

Accordingly, all of the trial court's orders from which the appeals were taken are affirmed.

Affirmed.

CERDA, J., concurs.

PRESIDING JUSTICE GREIMAN, dissenting:

I agree with the majority's disposition of the claim against Illinois Bell and would affirm the trial court. I also concur with the conclusion that the deposit with the clerk of the court of an amount equal to the liquidated damages is not an admission of liability by Holmes. I do not, however, agree with the breadth of the summary judgment entered in Holmes' favor.

During restoration of the building on Hinman Avenue, the Museum entered into a contract with Holmes for the installation of an alarm system and for future maintenance of the system. The contract and the 16 attached riders between the parties provide for

separate treatment of installation costs and service or maintenance charges. Some riders set out the installation costs and note an additional service or maintenance charge, others show the installation cost and state that there will be no additional service or maintenance charge, while others provide for merely an additional service or maintenance charge.

The majority correctly observes that the contract contains an exculpatory clause which seeks to exculpate Holmes from any liability "that might arise from a breach of the agreement or negligence on the part of Holmes." Our courts have recognized the validity of such clauses as they relate to contracts for the service or maintenance of alarm systems. See *Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 493 N.E.2d 1022; *Purolator Security, Inc. v. Wells Fargo Alarm Service* (1986), 141 Ill. App. 3d 1106, 491 N.E.2d 161; *First Financial Insurance Co. v. Purolator Security, Inc.* (1979), 69 Ill. App. 3d 413, 388 N.E.2d 17.

All of these cases addressed the exculpation of the defendants where their conduct in the service or maintenance of alarm systems was the subject matter of the litigation. None deal explicitly with the breach of their duty in the installation of the system. For example, the majority relies upon *Purolator Security, Inc. v. Wells Fargo Alarm Service* (1986), 141 Ill. App. 3d 1106, 491 N.E.2d 161, as "a case on point." (275 Ill. App. 3d at 180.) However, an examination of that decision reveals that the plaintiff alleged that the alarm company had failed to respond to the system's warning light or buzzer, failed to send an agent to the premises or contact law enforcement authorities when the light or buzzer was activated. There is no allegation as to a breach of duty in the installation of the system.

The issue here is whether the Construction Contract Indemnification for Negligence Act (the Act) (740 ILCS 35/1 (West 1992)) invalidates such exculpatory clauses as they apply to construction or installation undertakings. It is clear that it does not affect exculpation under the service and maintenance obligations of Holmes under the contract. But it is less clear that we can ignore the apparent language of the Act as to portions of the contract calling for construction or installation.

Like the recently demised Scaffolding Act, the majority, without citation, suggests that the Act was passed only to protect construction workers and only for damages incurred during the period of construction. Unfortunately, there is no section of the Act or preamble that leads to the imposition of such a limitation. The language of the Act defines the type of agreement into which an exculpatory clause may not be inserted and does not specify the class intended to benefit from its provisions.

Accordingly, I do not believe that the exculpatory clause bars an action for a breach of duty in connection with the construction or installation of the system even though the damages may occur after the completion of the project. Paragraphs 18(a), (b) and (c) of plaintiffs' complaint refer to the installation of the system and as to that narrow window of opportunity, I would reverse the order of the trial court only as to such allegations.

Although in *Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 493 N.E.2d 1022, the plaintiff's allegations refer to complaints about "installation," the defendant there did not raise the Act as a bar to the exculpatory clause and this issue was not considered by that court.

This appeal involves multiple plaintiffs: the Museum, Stephen Byer and Barbara Byer, individually, Stephen Byer & Associates (apparently a corporation with Byer as sole shareholder), a land trust holding title and the mortgage lender. Initially, the trial court entered judgment against only the Museum that was the sole signatory to the alarm contract. Later in the proceedings, the court found against the Byers individually and their corporation because of the knowledge imputed to them of the existence of the exculpatory clause citing as authority a Maryland case, *Schrier v. Beltway Alarm Co.* (1987), 73 Md. App. 281, 533 A.2d 1316. No proper allegations or showing were made by the defendant which would have allowed the piercing of the corporate veil. After a series of additional orders, judgment was entered against all of the other plaintiffs.

Since I do not believe the exculpatory clause to be an effective bar to the cause of action for Holmes' acts during construction, I need not address issues relating to the scope of the application of the *Scott & Fetzer* doctrine. In that case, the supreme court held that the exculpatory clause in the contract entered into between the warehouse owner and the alarm company could not defeat the claims of "adjacent tenants." Although the rights of persons storing materials on the subject property was not before the court, the court, by way of *dicta*, suggested that an action brought by "some party who had property stored in Wards' portion of the warehouse" might also be barred. (*Scott & Fetzer*, 112 Ill. 2d at 396.) Since I would hold the Act a bar to the exculpatory clause, I need not determine whether the Byers, their various entities, the land trust or the mortgage lender are parties "who had property stored" as defined by *Scott & Fetzer*. By this observation, however, I do not pass upon the question of whether a mortgage holder has a cause of action in any event.

I would, therefore, return this to the trial court to only consider a cause of action which arose as a result of the construction or installation of the system.