Katie ARSBERRY, et al. Plaintiffs,

v.

State of ILLINOIS, et al., Defendants.

No. 99 C 2457.

United States District Court,
N.D. Illinois,
Eastern Division.

March 22, 2000.

Paul L. Strauss, Carl W. Shapiro, Miner Barnhill & Galland, Michael Edward Deutsch, People's Law Offices, James Gerard Bradtke, Soule & Bradtke, Laurie S. Elkin, Stephen G. Seliger, Ltd., Patrick Daley Dolan, Seliger, Elkin & Dolan, Ltd, Chicago, IL, for Plaintiff.

Alexandra C. Buzanis, Richard John Siegel, Illinois Attorney General's Office, Patrick Malone Blanchard, Paul Anthony Castiglione, Leslie M. Smith, Kirkland & Ellis, Lois Lipton, Ross Benjamin Bricker, David Charles Layden, Jenner & Block, Gary Senner, Sanford Mark Pastroff, Sonnenschein, Nath, Rosenthal, Chicago, IL, Thomas F. Downing, Paul Francis Bruckner, DuPage County States Attorney's Office, Wheaton, IL, Patricia Johnson Lord, Jacqueline A. Morrison, Kane County State's Attorney's Office, Geneva, IL, Donald B. Leist, Elgin, IL, Ellen L. Champagne, Arlington Heights, IL, Jay M. Vogelson, Stutzman & Bromberg, P.C., Dallas, TX, Geraldine M. Alexis, Matthew C. Blickensderfer, Sidley & Austin, Chicago, IL, for Defendants.

## ORDER

HIBBLER, District Judge.

Pending before the Court is defendants' motion to dismiss the action brought against them by Katie Arsberry and others. The plaintiffs may be divided into two groups: (1) prisoners wishing to contact people on the outside and (2) people on the outside wishing to have telephone contact with prisoners. The defendants may also be divided into two groups: (1) governmental entities who are engaged in exclusive dealing agreements with telephone companies and (2) the telephone companies which provide long distance services for the government entities' prisons.

The causes of action arise under the First, Fifth and Fourteenth Amendments of the Constitution; the Sherman Antitrust Act; the Telecommunications Act of 1996; and various state causes of action.

■ The one issue that all of these causes of action have in common is that they challenge the fairness, at some level, of the telephone rates charged by the telephone companies to the recipients of prison inmate-initiated collect telephone calls. However, this is an issue which the Court finds to be non-justiciable under the "filed rate" and "primary jurisdiction" doctrines.

Pursuant to both the federal Telecommunications Act and the Universal Telephone Service Protection Law of 1985, the telephone company defendants file schedules or tariffs governing the telecom services they offer. 47 U.S.C. § 203(a); 220 ILCS § 5/13–501. These schedules contain the rates, terms and conditions of service, and cannot be varied by any other contract, agreement or unilateral action of the parties. *American Telephone and Telegraph Co. v. Central Office Telephone, Inc.*, 524 U.S. 214, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998). The purpose of the tariff is to preserve to the FCC and ICC the authority to determine the reasonableness of rates and to ensure that the telephone companies charge only the rates filed with those agencies. *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577–78, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981); *North River Ins. Co. v. Jones*, 275 Ill. App.3d 175, 211 Ill.Dec. 604, 655 N.E.2d 987 (1995), *appeal denied* 164 Ill.2d 567, 214 Ill.Dec. 323, 660 N.E.2d 1272.

The fact that Congress and the Illinois Legislature have vested these responsibilities in the FCC and ICC, respectively, is highly significant. First, the statutes clearly assign to the FCC and ICC the authority to determine the reasonableness of telecom rates. This is an area in which these dedicated agencies are experts in important ways that the Court is not. Congress' delegation of responsibility to the FCC is something that it was entitled to do under the broad sweep of the Commerce Clause. The Illinois Legislature was similarly authorized to enact the Universal Telephone Service Protection Law. Since they have done so, this Court is in no position to undermine their authority by seizing the fact-finding role for itself.

■ The "filed rate" doctrine is not merely a random government regulation; it is motivated by two "companion principles"—(1) the need to prevent carriers from engaging in price discrimination as between ratepayers (the "nondiscrimination strand") and (2) the preservation of the exclusive role of federal agencies in approving rates for telecommunications services that are "reasonable" by keeping courts out of the rate-making process (the "nonjusticiability strand"), a function that the federal regulatory agencies are more competent than the Court to perform. *Wegoland v. NYNEX Corp.*, 27 F.3d 17, 19 (2nd Cir.1994); *see also H.J. Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485, 488 (8th Cir.1992). Other jurists have waxed eloquent on the pros and cons of this doctrine, but the bottom line is that the fairness of the rate as filed is up to the FCC and ICC. In that determination, this Court has no role at all. There are several compelling reasons which require the Court to defer to the FCC and ICC in this dispute. First, the Court does not possess any experience in determining the fairness of telephone rates. Second, Congress has laid down no guidelines for judicial determination of these matters. Third, if the Court did interfere, it would violate the separation of powers doctrine and encroach upon the sovereignty of the Illinois state government. Fourth, the Court would run the risk of making a pronouncement on an issue another government body has seized primary jurisdiction over, a situation which could potentially end up in two government bodies rendering inconsistent opinions on the same issue. Given the pervasive interstate commerce issues connected with the process for the establishment of telephone rates, such a situation could be disastrous.

To illustrate how any action taken by this Court could result in a conflict one only need consider the possible remedies available to the Court if it found an equal protection cause of action. If the Court enjoined telephone companies from providing service at the filed rate it would then,

in effect, be forcing them to break their "contract" with the FCC and *sua sponte* usurp the authority of the ICC. If, alternatively, the Court decided to give the plaintiffs monetary compensation, the Court would then be economically punishing the telephone companies for obeying the FCC and ICC, which they are by law required to do. Additionally, in order to set compensation, the Court would be required to make its own determination of "reasonable" as opposed to "excessive" telephone rates. This is the function of the FCC and ICC in this very specialized, regulated industry. Either remedy would interfere with both bodies' delegated powers and authorities. Although there are some significant public policy issues which may dictate a need for review of these rates, it is not the role or function of this Court to effectuate public policy.

The foregoing is true for each and every cause of action asserted. Therefore, the Court must GRANT the Motion to Dismiss because this is a non-justiciable controversy and the FCC and ICC have primary jurisdiction over the issue. It is appropriate that this matter be referred to the FCC and ICC for examination. All motions in the present case are terminated as moot.